JAMES A. CHRISTY *et al.*

*v.*

A. W. CHRISTY, Admr.

*Opinion filed February 21, 1907.*

</div>

1. EXECUTORS AND ADMINISTRATORS—*administrator required to use only ordinary skill and diligence.* While an executor or administrator must act with the highest degree of fidelity and good faith in the performance of his duties, yet he is held only to the exercise of such skill and diligence as an ordinarily prudent man bestows upon his own similar private affairs, and if his acts stand the test of such rule he is not liable to the estate for loss which may be sustained, there being no fraud or collusion.

2. SAME—*what does not show lack of ordinary skill in selling stock.* That an administrator sold stock in a corporation, the ordinary market value of which was $250 per share, for $600 per share during a period when rival corporations were buying up the stock to obtain control of the corporation does not show lack of ordinary skill and diligence, even though other persons received as high as $1500 per share, where, had the competition suddenly ceased, as it was likely to do at any time, the price of the stock would have dropped back to its normal value.

3. SAME—*the fact that administrator sold his own stock at same price shows good faith.* That an administrator acted in good faith in selling stock of the estate at a certain price is shown by the fact that he sold his own stock in the same corporation for that price.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Greene county; the Hon. R. B. SHIRLEY, Judge, presiding.

WILLIAM G. BUSBY, RUSSELL KNEISLEY, and HENRY T. RAINEY, for appellants:

In Illinois, Missouri, and several other States, where the administrator is directed to sell, without obtaining an order to that effect, at public sale, if he wishes to sell at private sale he must apply to the court for permission. Woerner on Administration, 752; *Smith* v. *Coal Co.* 83 Ill. 498; *Furniture Co.* v. *Stiles,* 60 Miss. 849.

Private sales are always open to suspicion of bad faith and are not to be encouraged. It can seldom occur that a private sale is to be preferred to a sale at public outcry. By observing the directions of the statute the representative absolves himself and sureties from liability in case the property fails to bring its value and is only responsible for the amount realized, whereas by making private sale he invites question as to the integrity of his conduct, and incurs liability for the difference between the price obtained for the goods and that which he ought to have obtained. Pritchard on Wills and Admin. sec. 702; *Bass* v. *Chambliss,* 9 La. Ann. 376.

The doctrine of the common law that administrators shall take the property of the intestate in absolute ownership does not prevail in Missouri and Illinois, and the power of the personal representative of the decedent, whether testate or intestate, to dispose of the assets is limited and regulated by law. Where the common law doctrine does not prevail, the power of the administrator to dispose of the assets is limited and regulated by statute. Woerner on Administration, (2d ed.) 749; *Stagg* v. *Green,* 47 Mo. 500; *Stagg* v. *Linnenfelser,* 59 id. 342; *Chandler* v. *Stevenson,* 68 id. 450; *Roeger* v. *Langenberg,* 42 Mo. App. 12.

The measure of care and diligence which an executor or administrator is bound to bring to the management and closing of the estate is that which a prudent man would exercise under like circumstances. However good of faith and honest intention he may exercise in the discharge of his trust duties, unless he also exercise this degree of care and dili-

gence, and the estate suffers from lack of it, he is bound to make the loss good to the estate. *Spaulding* v. *Wakefield's Estate,* 53 Vt. 660.

An executor or administrator who, without an order of sale by the probate court, sells corporate stock belonging to the estate, is liable for the loss then resulting to the estate. Woerner on Administration, sec. 695; *Hiller* v. *Ladd,* 85 Fed. Rep. 703.

Acts of negligence in respect of control or the disposition of the estate, careless administration of it, or a willful disposition of the assets of the estate, whereby the rights of the creditors or legatees or parties entitled to distribution are defeated, amount to a *devastavit.* While no person is required by law to accept the trust of the execution of a will, yet if one does accept he must perform it, using due and reasonable care and diligence to prevent loss to the estate. *Whitney* v. *Peddicord,* 63 Ill. 249.

It is only when an administrator proceeds lawfully that he is protected by the rule of ordinary diligence. If he ignores the safeguards provided by law and elects to sell at private sale without authority, then he is held to the highest degree of diligence, and is liable for the highest market price that could have been obtained by the highest degree of diligence. *Garesche* v. *Priest,* 9 Mo. App. 270; *Mattocks* v. *Moulton,* 84 Me. 545; *Tucker* v. *Tucker,* 33 N. J. Eq. 235; *Shinn's Estate,* 166 Pa. St. 121; 11 Am. & Eng. Ency. of Law, (2d ed.) 1204; *Dudley* v. *Sanborn,* 159 Mass. 185; *Hiller* v. *Ladd,* 85 Fed. Rep. 703; *Hudson* v. *Hudson,* 5 Munf. 180; *Cannon* v. *Jenkins,* 16 N. C. 426; *Succession of Harris,* 29 La. Ann. 743; *Munteith* v. *Rahn,* 14 Wis. 210; *French* v. *Currier,* 47 N. H. 88.

F. W. LEHMANN, D. N. KIRBY, and H. P. NOBLE, for appellee:

The executors of the estate of the decedent may transfer the stock of the estate and convey a title which the corpora-

tion is bound to recognize, although the corporation itself is domiciled in another State.    I Cook on Corp. (3d ed.) par. 329.

The legal title to the personal estate of the decedent vests in the administrator or executor.    *Neubrecht* v. *Santmeyer,* 50 Ill. 74.

The right of an executor or administrator to transfer and sell and negotiate negotiable paper payable either to the decedent or to himself is well settled.    Horner on Probate Law, (2d ed.) par. 296.

Executors and administrators are considered as holding notes, bills and other securities in their representative capacity, and consequently each of them represents the deceased.

An executor or administrator ought to be allowed to exercise the prudence of an ordinarily diligent person in such matters.    Horner on Probate Law, (2d ed.) par. 296.

An executor or administrator has the absolute power of disposal over the whole personal effects of his testator or intestate, and they cannot be followed by creditors, much less by legatees, either general or specific, into the hands of the alienee.    2 Williams on Executors, 609.

As the personal representative has the legal title to the personalty, no reason is perceived why he should not be able to pass that title at private sale made in good faith, notwithstanding the statutes requiring an order of court.    *Burnap* v. *Dennis,* 3 Scam. 482; Horner on Probate Law, (2d ed.) par. 304.

Good faith and the care and diligence of a provident owner are all that is required of an administrator.    Where an administrator has acted prudently and honestly and with ordinary care and diligence he is not to be held answerable for any loss or even for a total diminution of the estate.    *Christy* v. *McBride,* I Scam. 75; *Rowen* v. *Kirkpatrick,* 14 Ill., I.

The administrator is required to use only that degree of diligence which ordinary men use in managing their own

affairs. *Whitney* v. *Peddicord,* 63 Ill. 249; *Lockwood* v. *Bond,* 33 id. 212; *Estate of Corrington,* 124 id. 363.

Mr. JUSTICE WILKIN delivered the opinion of the court:

Julia A. Christy died in Greene county, this State, about 1894, leaving, among other assets, seventy-one shares of stock in the Wiggins Ferry Company. These shares were sold by her administrator, the appellee, A. W. Christy, without an order of the county court, for $600 per share, in April, 1902. Exceptions were filed by several of the heirs to that portion of the administrator's final report showing the sale of said stock, but the county court overruled the exceptions and approved the report. On appeal to the circuit court the findings of the county court were sustained and the exceptions again overruled. The Appellate Court for the Third District affirmed the findings and judgment of the circuit court, and two of the heirs of deceased have brought that judgment to this court for review.

On May 8, 1902, the administrator filed his report of sale in the county court, and objections were then filed thereto. On that hearing the following stipulation was entered into by counsel for the respective parties: "It is stipulated as follows: That the exceptions to the report of sale of Wiggins Ferry stock shall be withdrawn and that the report of sale be approved and the money realized therefrom be now distributed to the parties entitled thereto, and that the administrator proceed at once with the final settlement of said estate. It is, however, agreed that on final settlement of said estate any heir may raise the question as to the sufficiency of the price obtained for said stock, the diligence of the administrator in the matter of said sale, and whether in said matter the administrator has committed waste or is guilty of a *devastavit.*" This first report of sale was never acted upon by the court, and on December 5, 1903, an amended report was filed, to which objections were again made. No stipulation seems to have been entered into concerning this

last report, but the matter was heard upon the report and objections thereto. It is manifest, however, that the sole question determined at that time was the sufficiency of the price obtained for the stock, the diligence of the administrator in making the sale and whether he was guilty of a *devastavit.* There does not appear to have been any question raised as to the character of the title to the stock taken by the purchaser, but it seems to have been conceded that he took a good and sufficient title thereto, notwithstanding the fact that the administrator did not obtain an order of the court to sell the same. In this court the only questions argued are as to the amount received and the diligence of the administrator in making the sale.

On page 28 of their brief counsel for appellants say: "In this State it has never been definitely determined since 1872, when our statute giving power to sell at private sale under order of court was enacted, what effect a sale without an order has with reference to the transfer of title to the property. We are inclined to think, however, that unless fraud is shown it would be impossible for the heirs to follow the property into the hands of the purchaser." We have searched the record carefully for an assignment of error questioning the character of the title vested in the purchaser and find none which can be said to fairly raise that question. We therefore conclude that the question as to the legality of the sale as between the purchaser and heirs is not before us, either upon propositions of law submitted or otherwise, and hence the matters for our consideration are the fairness of the price received, the diligence of the administrator in making the sale, and whether he committed waste or was guilty of a *devastavit* in the sale of said shares of stock. If he was, he is liable to the heirs for the difference between the price obtained and the fair market value.

In the performance of his duties an administrator must act with the highest degree of fidelity and with the utmost good faith, but he is held to the exercise of only that degree

of skill and diligence which an ordinarily prudent man bestows on his own similar private affairs. Nothing more can be required of him, and if his acts will stand the test of that rule he cannot be held liable for any loss that may be sustained by the estate of his intestate. 11 Am. & Eng. Ency. of Law, (2d ed.) 904; *Estate of Corrington,* 124 Ill. 363.

The evidence here shows that the Wiggins Ferry Company was at the time a corporation doing a ferry business across the Mississippi river at the city of St. Louis. Its stock had shortly prior to this sale been selling on the market for about $250 per share and the company had been paying a dividend of about eight per cent. In April, 1902, two rival corporations sought to buy up a majority of the stock for the purpose of controlling the corporation and its operation. The price rapidly increased under this competition, and for a time ranged all the way from $500 to $1500 per share. Appellee, the administrator, was one of the first holders of stock approached by one of the rival companies to make a sale, and after some negotiation he sold the shares in question at $600 per share. He not only sold the stock of the estate which he held as administrator and in which he had a one-fifth interest as heir, but also sold stock belonging wholly to him, individually, at the same price. While it is true that some of the heirs obtained $1000 per share for stock held by them and other shares were sold for as much as $1500 per share, yet the record shows that different prices were paid even on the same day, varying very materially in amount.

We do not understand the fidelity or good faith of appellee in making the sale is questioned. There is nothing whatever to show or tending to show that he acted fraudulently or collusively. The claim is that he might have obtained a higher price by the exercise of greater diligence. From what has been said it will be seen that $600 per share was a purely fictitious price. The evidence abundantly shows that the market was in the most critical state of fluctuation.

Every one must have realized that the moment the rivalry between the two companies ceased the price would drop back to about the former value. No one will claim on the evidence in this record that the stock, at the time the administrator sold, had a fixed and fair market value of even $600 per share. True, he might have obtained a greater price by delaying the sale, but it is also true that by so doing he might have been compelled to sell for a much less price than he realized. He had no reliable means of knowing how long the competition which had inflated the price would continue, and to hold him responsible for a mistake in judgment on that question would be most inequitable and unjust. As a matter of fact, the fictitious price only continued for a short time, and if he had refused the offer of $600 per share and the price had dropped back to $250 these heirs would in all probability have insisted upon his liability for the difference between the real market value and that which he could have obtained. The most convincing evidence of the perfect good faith on his part is the undisputed fact that he sold the stock in question, in which he had a part interest, and the shares which he individually owned, for the same price.

If there was any evidence upon which to base a claim of fraudulent conduct or bad faith on the part of the administrator we should not hesitate to reverse the judgment below, but there being no such evidence, and being convinced that in view of all the circumstances which surrounded him at the time he made the sale the price which he in fact received for the stock was a liberal one, we have no hesitancy in affirming the judgment of the Appellate Court.

Some question is made on behalf of the appellee as to the sufficiency of the assignments of error in this court, but in the view we have taken of the case upon its merits that point need not be considered.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*