# FIRST NATIONAL BANK OF KANSAS CITY v. JOHN D. WHITE, Appellant.

### Division One, May 31, 1909.

1. **JUDGMENT: Upon Warrant of Attorney: Strictly Construed: Confession: Upon Hearing.** A power found in a note authorizing any attorney at law "to appear for me in an action on the above note brought against me in any court of record, to waive issuing and service of process against me, and confess judgment against me, and also in my behalf to waive and release all errors in said proceedings and judgment, and all proceedings, appeals or writ of error thereon," if valid at all, must be construed with minute strictness; and all proceedings thereunder, if valid at all, must be within the strict letter of the warrant of attorney. The only judgment that could be entered under the authority granted is one by confession, and a judgment reciting that the attorney consented "that this cause may be taken up and heard, and said cause duly coming on to be heard, on the pleadings and evidence, and the court having heard and considered the same," etc., is not a judgment by confession, but one rendered upon and after a trial in which evidence was heard, and is therefore invalid.

2. **JUDGMENT OF OTHER STATES: Rendered Upon Warrant of Attorney.** Because the court in obedience to the full-faith-and-credit clause of the Federal Constitution has held good judgments of other States upon a warrant of attorney to confess judgments, is no reason for upholding such a judgment rendered by a court of this State.

3. **WARRANT OF ATTORNEY: Invalid Contract: Against Policy of Law: As Security for Debt.** A warrant of attorney written into a promissory note, authorizing any attorney at law to appear in court, waive service and confess judgment against the maker, is an invalid contract, and a judgment entered in pursuance thereto in this State is also invalid. The policy of our laws does not permit the maker, when entering into an obligation, to bargain away his right to be heard in court, should a question ever arise between him and the obligee in relation to it. Such written authorization, if a matter of procedure, does not find support in the Code (Sec. 649, R. S. 1899), which does not require a written warrant from a client to a licensed attorney. If it be considered a security for a debt, as it was at common law, it has never found recognition in this State, the policy of the Recorder's Act being against hidden security.

Bank v. White.

4. ———: ———: **Door to Fraud and Duress.** The policy of our law is against placing a debtor in the absolute power of the creditor, by permitting the debtor to obligate himself to pay a debt, and to authorize any attorney at law, selected by the creditor, to appear in any court of record, waive service of process, and confess judgment against him,, without notice or a hearing. The field of fraud, oppression and duress is too far enlarged by such an instrument.

5. ———: ———: **Denying Right of Appeal.** A warrant of attorney written into a promissory note, authorizing any attorney of record to appear, waive service and confess judgment and "to waive and release all errors in said proceedings and judgment, and all proceedings, appeals or writs of error thereon," is void because it denies the debtor an appeal, contrary to the statute.

6. ———: ———: **Any Attorney.** And such a warrant to "any attorney at law" to appear "in any court of record" is void, because it gives the creditor the right to go to any State for his judgment.

7. **CONFESSION OF JUDGMENT: Covered by Statute: Warrant of Attorney.** The statutes (Secs. 789-791, R. S. 1899) covers the subject of a judgment by confession, and if the common law as to warrants of attorney authorizing a confession of judgment was ever in force in this State, it has been abrogated by these statutes; and they do not authorize an agreement written into the body of a note, empowering any attorney at law to appear for the maker, waive service and confess judgment.

Appeal from Jackson Circuit Court.—*Hon. Thos. J. Seehorn,* Special Judge.

REVERSED.

*Samuel Feller* and *Karnes, New & Krauthoff* for appellant.

(1) Defendant contends that the court had no jurisdiction of the subject-matter or over the person of defendant, and had no power or authority to render the judgment. 1. The conditions of the note conferred no authority on C. E. Denham to enter the appearance of the defendant and confess judgment. 2. Said confession of judgment does not comply with

the requirements of the laws of Missouri. 3. No authority is given in said note to any attorney at law to admit the truth of the allegations in the plaintiff's petition and to consent to a trial. 4. Plaintiff cannot accomplish indirectly what the law forbids being done directly. 5. Defendant is entitled to his day in court, and he has a good and meritorious defense to said action. It is against the policy of the law of Missouri to recognize conditions such as are contained in the note in question. It certainly cannot be successfully contended that the authority contained in the note can be varied from or enlarged by an attorney at law who may assume to appear for the defendant in a suit brought on the note, but that the authority given to such attorney must be strictly adhered to. He can do no other act or thing except that set out in the note. The only authority given to an attorney at law is to enter the appearance of the defendant and waive issuance and service of process and "confess judgment." Even if we admit, which we do not, that said conditions are valid in this State, yet all the attorney can do is to confess judgment. He cannot admit on behalf of defendant the allegations in the petition and consent to a trial, for no such authority is given to him in the note. His authority certainly is special and not general. Denham had no authority to admit the allegations of the petition and consent to a trial. The court had no jurisdiction or authority to enter upon a trial of the cause. It cannot be treated as a judgment by consent, for Denham had no authority to consent to a judgment on behalf of defendant. Manifestly this authority did not comply with the provisions of Secs. 790 or 792, R. S. 1899. (2) At common law there were but two kinds of judgments by confession. First, where, after service, the defendant, without plea, confesses the cause of action as just; second, when, after pleading and before trial, the defendant both confesses the cause of action and

withdraws the plea, and judgment is entered without trial. In both cases regular process must have been served on defendant. Burr & Co. v. Mather Co., 51 Mo. App. 470. There was no such thing as confession of judgment without issuance and service of process at common law. The only authority to enter judgment by confession without the service of regular process on defendant is that contained in the sections above referred to, and must be strictly complied with in order to confer jurisdiction on the court. Oyster v. Shumate, 12 Mo. 580; Loth v. Faconesowich, 22 Mo. App. 68; Gilbert v. Gilbert, 33 Mo. App. 268. It is against the policy of the laws of Missouri to recognize conditions such as contained in the note in question. Dissenting opinion of VALLIANT, J., in Crim v. Crim, 162 Mo. 544.

*Ball & Ryland* for respondent.

(1) The warrant of attorney is valid, not being prohibited by statute. 17 Am. and Eng. Ency. Law (2 Ed.), 752; 30 Ib. 106. (2) The court had jurisdiction. Genestelle v. Waugh, 11 Mo. 367; Crim v. Crim, 162 Mo. 544; Vennum v. Martens, 119 Mo. App. 461; Laws 1905, p. 244, sec. 5; Hutchinson v. Palmer (Ala.), 40 So. 339; Bank v. Garland (Mich.), 67 N. W. 559; Teel v. Yost, 128 N. Y. 387; Grubbs v. Blum, 62 Tex. 426; Holmes v. Parker, 125 Ill. 478; Wassell v. Reardon, 11 Ark. 705; Rapley v. Price, 11 Ark. 713; Parker v. Poole, 12 Tex. 86. (3) Judgment rendered on warrant of attorney will not be set aside, unless the defendant affirmatively shows to the satisfaction of the court that he has a meritorious defense. Anderson v. Studebaker, 37 Ill. App. 532; Berg v. Bank, 84 Ill. App. 614; Farwell v. Houston, 151 Ill. 239; Pierce v. Miller, 99 Ill. App. 424, 207 Ill. 188. (4) The attorney appearing and confessing the judgment did not exceed his authority; and the statute relative to the formal

confessions of judgment has no application to the case. R. S. 1899, sec. 789; Genestelle v. Waugh, 11 Mo. 367; Teel v. Yost, 128 N. Y. 402; Boyd v. Ward Furniture Co., 38 Mo. App. 210; Adler v. Anderson, 42 Mo. App. 189; Houpt v. Bohl, 75 S. W. 470, 71 Ark. 330.

GRAVES, J.—The record in this case discloses that on October 4, 1905, the defendant executed and delivered to the plaintiff, a certain written obligation in the following form:

"KANSAS CITY, Mo., Oct. 4, 1905.
"$14,758.00.

"Ninety days after date, for value received, we jointly and severally promise to pay The First National Bank of Kansas City, or order, Fourteen Thousand Seven Hundred Fifty-eight Dollars, at its office in Kansas City, Mo., with interest from date at the rate of 7 per cent per annum until paid. All indorsers and parties hereto jointly and severally waive protest.

"And we jointly and severally do hereby authorize any attorney at law to appear for us, or any of us, or the survivor or survivors of us, in an action on the above note brought against us, or either of us, or the survivor or survivors of us, by said The First National Bank of Kansas City, at any time after said note becomes due, in any Court of Record in the State of Missouri or elsewhere, to waive the issuing and service of process against us, or any of us, or the survivor or survivors of us, and confess judgment in favor of said The First National Bank of Kansas City, against us, or any of us, or the survivor or survivors of us, for the amount that may then be due thereon, with interest at the rate therein mentioned, and the costs of suit, together with an attorney's fee of 10 per cent and also in behalf of us or any of us, or the sur-

220 Sup—46

vivor or survivors of us, to waive and release all errors in said proceedings and judgment, and all proceedings, appeals or writ of error thereon.

"JOHN D. WHITE."

January 19, 1906, the plaintiff filed in the circuit court of Jackson county, Missouri, a petition, to which was attached and filed the above written instrument, in this language:

"Plaintiff for its cause of action against the defendant states that on the 4th day of October, 1905, the defendant executed and delivered to the plaintiff his promissory note, wherein and whereby for value received he promised to pay to the plaintiff, or its order, ninety days after date, the sum of fourteen thousand seven hundred fifty-eight ($14,758) dollars at plaintiff's office in Kansas City, Missouri, with interest from date at the rate of seven per cent per annum. That said note is now past due, plaintiff is still the owner and holder thereof, and the whole thereof together with interest, remains due and unpaid; that the defendant, in and by the terms of said note, agreed and authorized any attorney to appear for him in any action brought against him by plaintiff at any time after said note should become due, in any court of record in the State of Missouri, and to waive the issuance and service of process upon him, and to confess judgment in favor of plaintiff and against defendant for the amount that might then be due on said note, with interest at the rate therein mentioned, costs of suit, and an attorney's fee of ten per cent, and to waive and release all errors in said proceedings and judgment and all appeals or writs of error. Said note is herewith filed, marked 'Exhibit A' and made part hereof.

"Wherefore, plaintiff prays judgment against the defendant for said sum of fourteen thousand seven

hundred fifty-eight dollars, with interest thereon from October 4, 1905, at the rate of seven per cent per annum, and with attorney's fee of ten per cent thereof, and all costs.''

On the same date and at the same time there was filed in said cause the following:

''Now comes C. E. Denham, attorney at law, and pursuant to the authority given by the note sued on herein, appears for and enters the appearance of defendant John D. White in the above-entitled cause, waives the issuing and service of process against said defendant, admits that the matters and things stated in the petition herein are true, and consents that judgment may be entered in favor of plaintiff against said defendant as prayed in the petition.

    ''JOHN D. WHITE,
    ''By C. E. DENHAM,
     ''Attorney at Law.''

After the filing of the several instruments set out above, and on the same day, the circuit court of Jackson county entered the following judgment in said cause:

''Now comes plaintiff by Ball & Ryland, its attorneys, and comes defendant by C. E. Denham, attorney at law, and said defendant by said attorney enters his appearance herein and waives issuance and service of process, and consents that this cause may be taken up and heard and said cause duly coming on to be heard, on the pleadings and evidence, and the court having heard and considered the same and being fully advised in the premises, finds for the plaintiff and that the matters and things alleged in the petition are true, and finds that by the terms of the note sued on defendant authorized said attorney at law to enter his appearance herein and waive issuance and service of

process and to consent that this cause may be now heard and judgment rendered in favor of plaintiff for the amount due on said note, and the court finds that there is now due on said note and plaintiff is entitled to recover from defendant thereon the sum of fifteen thousand sixty-five and 51-100 ($15,065.51) dollars, principal and interest, and the further sum of fourteen hundred seventy-five and 80-100 ($1475.80) dollars as attorney's fees, making a total of sixteen thousand five hundred and forty-one and 31-100 dollars ($16,541.31).

"It is therefore considered, ordered and adjudged by the court that the plaintiff have and recover of and from the defendant the sum of $16,541.31, with interest on $15,065.51 of said sum from this date at the rate of seven per cent per annum together with all costs, and that plaintiff have execution hereof.

"It is further ordered that plaintiff be allowed to withdraw said note from the files upon filing a copy duly attested by the clerk of this court."

The next day, January 20, 1906, the defendant White, through counsel appearing specially, filed a motion to set aside the foregoing judgment, and late on February 1, 1906, filed an amended motion, in this language:

"Now on this day comes J. D. White, the defendant, and appearing specially for the purposes of this motion only, moves the court to set aside and hold for naught a certain alleged judgment rendered against the defendant and in favor of the plaintiff on the 19th day of January, 1906, for $16,541.31, for the following reasons:

"First: The court had no jurisdiction of the subject-matter or over the defendant and had no power or authority to render the alleged judgment.

"Second: Said cause of action was filed on January 19, 1906, and immediately thereafter, and without notice to the defendant, the court undertook to

render judgment against the defendant; that the defendant was not served 'with summons, neither did he enter his appearance in said cause or authorize any one else to enter his appearance therein for or on his behalf.

"Third: That C. E. Denham is associated with Ball & Ryland, attorneys for plaintiff herein; that the defendant never at any time authorized said C. E. Denham to represent him in any. manner or to enter his appearance in this case, or to do anything whatsoever for or on his behalf in connection with this action; that the defendant had no notice or knowledge of the fact that the plaintiff had instituted an action against him or that said C. E. Denham pretended to act for him or had pretended to enter his appearance in said case until January 20, 1906, the day after the said pretended judgment was rendered.

"Fourth: That the defendant has a good and meritorious defense to said cause of action in that said note was given without consideration; that the defendant never received anything of value therefor; that long prior to the giving of said note the plaintiff loaned to the Winning Blair Millinery Company the sum of about $17,000; that after said money was so loaned the plaintiff brought a suit in this court against said Winning Blair Millinery Company and had the defendant herein appointed receiver of said Winning Blair Millinery Company; that after the defendant was appointed receiver, the plaintiff prevailed upon him to execute his note to the plaintiff for the amount which he was owing to the plaintiff, the Winning Blair Millinery Company; that the defendant received no part of said money, neither did the plaintiff part with anything of value at the time the defendant executed said note, and that the defendant was in no way liable to the plaintiff on the indebtedness due for the plaintiff from Winning Blair Millinery Company."

This motion was verified by the affidavit of defendant White.

The motion was heard upon affidavits, the substance of which is not necessary to state at this point. The motion was overruled, and the defendant has appealed from the judgment against him, set out above. Points made will be noticed in the course of the opinion.

I. Analyzed and abbreviated the power which this alleged warrant of attorney purports to grant is, "to appear for us . . . in an action on the above note brought against us . . . in any court of record . . . to waive the issuing and service of process against us . . . and confess judgment . . . against us . . . and also in behalf of us . . . to waive and release all errors in said proceedings and judgment, and all proceedings, appeals or writ of error thereon."

Under this power, Mr. Denham, as shown by his writing above, entered appearance, waived the issuance and service of process, *admitted the allegations of the petition to be true,* and consented that judgment might be entered for plaintiff and against defendant as prayed in the petition.

The foregoing is the authority attempted to be exercised by Mr. Denham and the manner of its execution. It will be noticed that he admits the truth of the charges made in the petition and consents that judgment should be entered as prayed. The court, however, does not seem to have been satisfied with this course, if we are permitted, which we are, to gather its version of the matter from the judgment in the case. By the judgment it appears that Mr. Denham, after entering appearance and waiving process and service thereof, only consented "that this cause may be taken up and heard." That the court fully understood that he (Denham) made no further consent is

evidenced by its judgment in which it is stated, "and said cause duly coming on to be heard, on the pleadings *and evidence*, and the court having heard and considered the same [meaning the pleadings *and evidence*] and being fully advised in the premises, finds for the plaintiff," etc.

It must be apparent that the power of such an instrument as the one before us should be construed with minute strictness. Not only so but the proceedings thereunder, if valid at all, must be within the strict letter of the warrant of attorney. [23 Cyc. 705; Cushman v. Welsh, 19 Ohio St. 536; Sewing Machine Co. v. Radcliffe, 137 U. S. 287; Bank v. St. John, 5 Hill (N. Y.) l. c. 500; Grubbs v. Blum, 62 Tex. 426; Tidd's Practice (4 Am. Ed.), 551.]

If the court acquired jurisdiction of the defendant at all it was by virtue of the terms of the instrument before us. And if the court could act at all it must act within the strict purview of the instrument giving it jurisdiction, and enter a judgment as by the terms of the instrument directed, and not otherwise. [Cushman v. Welsh, *supra*.]

The only judgment which could be entered under the authority granted and given was one by confession. The judgment before us does not purport to be a judgment by confession, or even a judgment by consent. Upon the face of it, it is a judgment upon and after a trial in which evidence was heard. So says the judgment and there being nothing in the record showing the facts in this regard antedating the entry of judgment, the recitals are conclusive. A judgment upon a trial was beyond the scope of the powers granted in the alleged warrant of attorney. Such a judgment is not a judgment by confession. [Holliday v. Myers, 11 W. Va. l. c. 298.]

In the Holliday case, *supra,* the court had under consideration the following judgment: "This day came the parties, by their attorneys; and the defend-

ants by their attorney, withdrew their plea at a former day pleaded; thereupon the plaintiffs having proved their cause, it is considered by the court that the plaintiffs recover against the defendants, Joseph Myers and James M. Johnson, $301.72, with interest thereon from the 4th day of January, 1872, till paid; also their costs by them in their behalf in this cause expended.'' Of this judgment the court makes some remarks which are peculiarly applicable to the judgment before us. The language used is: ''This judgment, it seems to me from its form and language, is a judgment rendered upon proof of the cause of action made to the court and not upon confession of judgment. This judgment is expressed upon its face to be a judgment rendered 'upon proof of the cause' made to the court, and being so expressed, it should therefore be so considered. The judgment is not such a judgment as is entered by *non sum informatus;* or by confession or *cognovit actionem;* or by default for defect of plea after appearance; or *nil dicit* as it is termed; or by default under our statute for failure to appear after having been duly summoned.''

We conclude therefore that even if it be granted that the written instrument involved in this suit was sufficient to give the court jurisdiction of the person, yet the judgment upon its face is not a judgment by confession and is unauthorized by the warrant of attorney, and therefore should for this reason be reversed.

II. But going beyond the mere technical question in our preceding paragraph discussed, we come to a question urged which goes to the very root of this case, and whilst new and novel in this State, we do not feel that the cause should be disposed of without discussing and passing upon that question. Defendant urges that our statute prescribes the method by which judgments by confession shall be entered, and

that inasmuch as this warrant of attorney does not comply with the statute, there is no authority for the judgment. Contra the plaintiff contends that this State adopted the common law, and that the statutes in question are not exclusive, but only cumulative, and that this proceeding was authorized by the common law. This necessitates an investigation of the old common-law warrant of attorney, for the instrument before us is but the outgrowth of that ancient document. It began as a pure matter of procedure, and in infancy was not broad and comprehensive as in later years. Originally, parties litigant had to appear in person and not otherwise. Of this, Blackstone, 3 Blackstone 25, says: "Formerly every suitor was obliged to appear in person, to prosecute or defend his suit (according to the old Gothic constitution), unless by special license under the King's letters-patent. This is still the law in criminal cases. And an idiot cannot to this day appear by attorney, but in person; for he hath not discretion to enable him to appoint a proper substitute; and upon his being brought before the court in so defenceless a condition, the judges are bound to take care of his interests, and they shall admit the best plea in his behalf that any one present can suggest. But, as in the Roman law, '*cum olim in usu fuisset, alterius nomine agi non posse, sed, quia hoc non minimam incommoditatem habeat, caeperunt homines per procuratores litigare,*' so with us, upon the same principle of convenience, it is now permitted in general, by divers ancient statutes, whereof the first is statute Westm. 3, c. 10, that attorneys may be made to prosecute or defend any action in the absence of the parties to the suit."

So too, says Tidd, 1 Tidd's Prac., p. 92: "At common law, the plaintiff and defendant must, in general, have appeared in person; and could not have

appeared by attorney, without the King's special warrant, by writ or letters patent."

This warrant of attorney to sue for defendant is thus defined in Cyclopedia Law Dictionary, p. 693: "A special warrant from the Crown, authorizing a party to appoint an attorney to sue or defend for him. [Gilb., C. P., 32; Bl. Comm. 25.]"

Later, the parties themselves gave written authority to the attorney who was to begin or defend a suit, and the same author thus defines this character of warrant of attorney: "A special authority given by a party to his attorney, to commence a suit, or to appear and defend a suit, in his behalf. These warrants are now disused, though formal entries of them upon the record were long retained in practice. [1 Burrill's Prac., 39.]"

This right of the parties to appoint their attorneys had its birth by an early statute. Tidd says: "And now by the statute of Westm. 2 (13 Edw. I.), c. 10, a general liberty is given the parties, of appearing by attorney."

It also appears that even when the parties began appointing attorneys it was done by parol in open court, but later by writing denominated warrants of attorney. [1 Tidd's Prac., p. 93.] The author there says: "Attorneys were anciently appointed in court, when actually present; but they are now usually appointed out of court, by warrant of attorney; which should regularly be in writing; but an authority by parol is said to be sufficient to support a judgment; and even if an attorney appear without warrant, it is a good appearance as to the court, though he is liable to an action."

In Burrill's Prac., vol. 1, p. 39, it is said: "Attorneys were formerly appointed by special warrant in writing, and previous to the revised statutes, a memorandum of such warrant was always required to be entered on the record. But this practice is now abol-

ished, and attorneys are generally appointed by parol.''

Of course, the writer is discussing the early New York practice, but as Burrill says: ''The practice of the Supreme Court of this State was originally derived from that of the superior common law courts of England,'' his remarks are applicable to the question before us.

Progressing, these warrants of attorney took on a commercial phase, and were used as security for debt. Of this Blackstone (3 Blackstone, 397), says: ''And therefore it is very usual, in order to strengthen a creditor's security, for the debtor to execute a warrant of attorney to some attorney named by the creditor, empowering him to confess a judgment by either of the ways just now mentioned [by *nihil dicit, cognovit actionem,* or *non sum informatus*] in an action of debt to be brought by the creditor against the debtor for the specific sum due; which judgment, when confessed, is absolutely complete and binding; provided the same (as is also required in all other judgments) be regularly docquetted, that is, abstracted and entered in a book, according to the directions of statute 4 & 5 W. and M., c. 20.''

So too says Tidd (1 Tidd's Prac., p. 545): ''The security usually given by the defendant to the plaintiff, on compromising an action, and which is also frequently given where no action is depending, is a warrant of attorney; so called, from its authorizing the attorney or attorneys, to whom it is directed, to appear for the defendant, and receive a declaration, in an action to be brought against him, and thereupon to confess the same action, or to suffer judgment therein to pass by default, etc.''

These particular warrants of attorney are thus defined in Cyclopedia Law Dictionary: ''An instrument in writing, addressed to one or more attorneys therein named, authorizing them, generally, to appear

in any court, or in some specified court, on behalf of the person giving it, and to confess judgment in favor of some particular person therein named, in an action of debt, and usually containing a stipulation not to bring any writ of error, or file a bill in equity, so as to delay him.''

Speaking of the English practice under the latter day commercial warrants of attorney, Mr. Tidd (1 Tidd's Prac., 552) says: ''Within a year and a day next after the date of the warrant, judgment may be entered of course, without applying to the court, or a judge. But if it be not entered within that time, the Court of King's Bench must be moved in term time, or, if the warrant of attorney be not above ten years old, an application may be made to a judge in vacation, for leave to enter up the judgment, on an affidavit of the due execution of the warrant of attorney, that the debt, or part of it, is still due, and that the parties are living. This affidavit may be properly entitled in the cause in which judgment is entered up; and it seems that an affidavit sworn before a justice of the peace in Scotland, is admissible if the handwriting of the justice be authenticated. If the warrant of attorney be above ten years old, the application must be made to the court; and where it is above twenty years old, there must in general be a rule to show cause, founded on an affidavit, stating facts which rebut the presumption of payment.''

Such judgments on fresh warrants of attorney were entered by the clerk without knowledge of the court. A slight recognition of such a judgment in this State is found in Finley v. Caldwell, 1 Mo. 512, but this was evidently under statute. Vide, Holmes v. Carr & Co., 1 Mo. 56.

Such warrants of attorney, at common law, were frequently used by imprisoned debtors, who authorized confession of debt and compromises to be made thereunder. When under arrest such parties were

not allowed to sign the warrant of attorney without there being present an attorney with whom he could advise.

We have thus gone into the details of what we conceive to be the origin of the character of instrument we have before us, so that we may discuss with intelligence the validity of the same in the light and spirit of our laws. First, it will be observed that in infancy the warrant of attorney was purely a question of practice, and as a matter of fact was the subject of many ancient court rules and statutes. Later it assumed the role of security for debt. The validity of a Missouri instrument of this kind has never been before this court. We have often had before us judgments of other State courts rendered upon such an instrument, and under the full-faith-and-credit clause of the Federal Constitution have held such judgments good. [Crim v. Crim, 162 Mo. 544, and cases cited.]

We have been cited to the case of Genestelle v. Waugh & Corthron, 11 Mo. 367, as a case in point. We have examined the original files in that case. The point here raised was neither raised nor discussed in that case. Genestelle had executed his three several negotiable promissory notes to Waugh & Corthron of date April 14, 1844. These notes were in the shortest and simplest form for such instruments and due respectively in sixty days, four months and six months. On April 16, 1844, Genestelle signed a written instrument in the presence of B. B. Dayton by which he authorized John R. Shepley and four others, specifically named, ''or any other attorney of any court of record in the State of Missouri, to appear in court during term time and receive a declaration or petition in debt on said note and to confess said action and confess judgment.'' It also authorized a release of errors. There were three of these instruments, one for each note and in which the note was set out. Dayton made affidavit to the signature of Genestelle

to each, and the three notes, with the three powers of attorney, were all filed with a petition on April 21, 1845. The judgment was entered for the sum of the three notes. Motion was made to set it aside on several grounds, but the only ground urged in the short brief filed in this court, was that neither of the three powers of attorney authorized the confession of this lump judgment. That is the only question passed upon here.

We have found also the case of Wood v. Ellis, Admr., 10 Mo. 382, wherein there was a confession of judgment by attorney, but in this case an examination of the files shows a plain note executed July 23, 1840, due one day after date, and on February 26, 1841, a power of attorney in fact was executed to Uriel Wright and two others to appear at the March term of the Lewis Circuit Court and confess judgment and release errors. The power was executed by Wright. The note was signed by Glinn & Reese and W. S. Pemberton. The power of attorney was signed by John D. Glinn and W. S. Pemberton, but Pemberton's name was not in the body of the instrument. Of this defect the administrator of Pemberton sought to take advantage. So that the question before us was not in that case.

In neither of these cases was the question raised as to whether or not the instruments were sufficient to give the court jurisdiction over the makers of the note, nor were the notes and instruments used therewith in form as here. But even had they been in form as here the point here urged was not there urged. So that we repeat that the question is new to this State, save and except what is said by VALLIANT, J., in his dissenting opinion in Crim v. Crim, *supra*. The majority opinion in the Crim case deals only with the question as to whether or not we should give full faith and credit to an Ohio judgment had upon a contract of this character, when sued upon in this State, and

we held that we should give such credit, VALLIANT and ROBINSON, JJ., dissenting.

Recognizing, as we do, that it is settled in this State that full faith and credit will be given to the judgments of other States when had upon contracts of this character, yet that does not mean that we have held that such an instrument is valid under the laws of this State, and if· executed in this State, would be enforced by our courts. To our mind such an instrument is contrary to the public policy of Missouri, as we gather such public policy from the laws of the State, so that we heartily concur in the following from Judge VALLIANT's opinion in the Crim case:

"The so-called authorization would certainly not be recognized as valid under the laws of this State, not because we do not recognize the right of a man to appoint an attorney in the regular way to enter his appearance in a suit in court, even for the purpose of suffering judgment to go against him, but because it is against the policy of our law to permit a man, when entering into an obligation, to bargain away his right to be heard in court, should a question ever arise between him and his adversary in relation to it. A man who has signed a paper of that kind, if it is valid, is completely at the mercy of the holder, whatever the merits of the case may be; because the holder may go to any forum in the United States and select any attorney whom he chooses and have judgment entered against the maker, who does not know that he is being sued."

If it be considered as a question of procedure in our courts to thus appoint an attorney, it finds no support under our Code of Procedure, or the Attorney's Act of the State. Of the Code, section 649, Revised Statutes 1899, says: "Parties may prosecute and defend their own suits in proper person or by attorney. It shall not be necessary to file any warrant of attorney to authorize any attorney to appear in any court

for either party to an action brought therein, except in cases where it shall be specially required by law."

Our practice has never required a written warrant of attorney from a client to a licensed attorney, whether he be called upon to sue or defend.

And if this instrument be considered as a security for a debt, as it was by the common law, it has never so found recognition in this State. The policy of our law has been against such hidden securities for debt. Our Recorder's Act is such that instruments intended as security for debt should find a place in the public records, and if not, they have often been viewed with suspicion, and their bona-fides often questioned.

Nor do we think that the policy of our law is such as to thus place a debtor in the absolute power of his creditor. The field for fraud is too far enlarged by such an instrument. Oppression and tyranny would follow the footsteps of such a diversion in the way of security for debt. Such instruments procured by duress could shortly be placed in judgment in a foreign court and much distress result therefrom.

Again, under the law the right to appeal to this court or some other appellate court is granted to all persons against whom an adverse judgment is rendered, and this statutory right is by the instrument stricken down. True it is that such right is not claimed in this case, but it is a part of the bond and we hardly know why this pound of flesh has not been demanded. Courts guard with jealous eye any contract innovations upon their jurisdiction. The instrument before us considered in the light of a contract, actually reduces the courts to mere clerks to enter and record the judgment called for therein. By our statute, section 645, Revised Statutes 1899, a party to a written instrument of this character has the right to show a failure of consideration, but this right is brushed to the wind by this instrument and the jurisdiction of the court to hear that controversy is by the

contract divested. In 9 Cyc. 510, it is said: "Agreements whose object is to oust the jurisdiction of the courts are contrary to public policy and will not be enforced. Thus it is held that any stipulation between parties to a contract distinguishing between the different courts of the country is contrary to public policy. The principle has also been applied to a stipulation in a contract that a party who breaks it may not be sued, to an agreement designating a person to be sued for its breach who is nowise liable and prohibiting action against any but him, to a provision in a lease that the landlord shall have the right to take immediate judgment against the tenant in case of a default on his part, without giving the notice and demand for possession and filing the complaint required by statute, to a by-law of a benefit association that the decisions of its officers on a claim shall be final and conclusive, and to many other agreements of a similar tendency. In some courts, any agreement as to the time for suing different from the time allowed by the statute of limitations within which suit shall be brought or the right to sue be barred is held void."

The contract not only provides that the plaintiff in the contemplated proceeding for a mere formal entry of judgment, may go to any court of record in this State, but may go to any court of record elsewhere. Such contracts have received the condemnation of this court. In the case of Reichard v. Manhattan Life Ins. Co., 31 Mo. l. c. 520, this court said: "The next error is that the court refused to instruct the jury that, if they found from the evidence that when application was made for the policy of insurance the applicants waived all right to bring any action for any claim whatever arising under said policy except in the courts of the State of New York, then the plaintiff cannot recover. We think the court very properly

refused this instruction, not only upon the ground that the agreement to waive the right to sue in our courts is void, as against public policy, but because it is in direct contravention of a statute of this State passed for the government and regulations of agencies of foreign insurance companies approved December 8, 1855.''

We shall not pursue this question farther. This contract, in so far as it goes beyond the usual provisions of a note, is void as against the public policy of the State, as such public policy is found expressed in our laws and decisions. Such agreements are iniquitous to the uttermost and should be promptly condemned by the courts, until such time as they may receive express statutory recognition, as they have in some States.

III. Before concluding, one other matter should be mentioned. At most the latter clause of the judgment note is but what is known as a warrant of attorney, as herein elsewhere stated. The power granted is to confess judgment. Now, even if it be said that there was full common law authority for such an instrument, until our Legislature had acted upon the subject in such a manner as to abrogate the common law, yet when we examine our statutes we find the subject fully covered by statute, which statute necessarily abrogates the common law. What is the subject-matter? Nothing, save and except the mode and manner of entering a judgment by confession. This mode and manner is fully covered by Revised Statutes 1899, sections 789 to 792, inclusive, which read:

''Sec. 789. A judgment by confession may be entered without action, either for money due or to become due, or to secure any person against contingent liability on behalf of the defendant, or both, in the manner herein prescribed.

"Sec. 790. A statement in writing must be made, signed by the defendant, and verified by affidavit, to the following effect: First, it must state the amount for which the judgment may be rendered, and authorize the entry of judgment thereon; second, if it be for money due, or to become due, it must state concisely the facts out of which it arose, and must show that the sum confessed therefor is justly due, or to become due; third, if it be for the purpose of securing the plaintiff against a contingent liability, it must state concisely the facts constituting the liability, and must show that the sum confessed therefor does not exceed the same.

"Sec. 791. Such statement and affidavit shall be filed, and the court shall render judgment for the amount confessed, and cause the same to be entered upon the records, first being satisfied of the identity of the defendant, if present, or, if not present, that he executed the same in writing and made the affidavit hereinbefore required."

The judgment before us shows that it was not procured through either of the methods prescribed by these statutes. When this contract uses the words "confession of judgment" it must be construed to mean by the methods prescribed by statute for confession of judgment. Authorities from other States lend but little light, because their statutes are different.

A reading of the statutes above but shows the public policy of the State to obviate frauds. Note the precautions requiring affidavits and acknowledgments, so as to have everything in the open rather than in the dark.

From what has been said, it follows that the circuit court never had jurisdiction of the defendant, and the judgment is reversed. All concur.