**TURNER v. ALTON BANKING &
TRUST CO.**

No. 13560.

Circuit Court of Appeals, Eighth Circuit.
Feb. 27, 1948.

Rehearing Denied March 30, 1948.

306

Chase Morsey, of St. Louis, Mo. (Orville Richardson and Jones, Hocker, Gladney & Grand, all of St. Louis, Mo., on the brief), for appellant.

B. Sherman Landau, of St. Louis, Mo. (Louis E. Miller, of St. Louis, Mo., Cross, Streuber, Gibbons & Gwillim, of Alton, Ill., and Miller & Landau, of St. Louis, Mo., on the brief), for appellee.

Before GARDNER, THOMAS, and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

The appeal is from an order striking a counterclaim in a diversity of citizenship case. The controlling questions are (1) whether under Missouri law a defendant may assert a counterclaim against a foreign executor as an individual, where the executor sues in that State on a judgment recovered by him in his representative capacity in the State of his appointment and (2), if so, whether the alleged wrong, which was the basis of the counterclaim here and which had occurred in Illinois, gave rise to a general cause of action in appellant's favor under Illinois law. The record does not indicate the basis of the trial court's action in striking the counterclaim.

The situation can be briefly stated. Appellee, as executor of the will of appellant's father, probated in Illinois, had sued appellant in the courts of Illinois and taken judgment against her on a cognovit note[1] executed by her in favor of her father during his lifetime. There-

---

[1] Illinois allows judgments to be taken on general warrants of attorney and recognizes such judgments as valid. Fortune v. Bartolomei, 164 Ill. 51, 45 N.E. 274; Packer v. Roberts, 140 Ill. 9, 29 N. E. 668. Missouri refuses to allow judg-

after, appellee brought suit on the Illinois judgment in the federal court in Missouri, where appellant resided. Appellant filed a counterclaim[2] seeking damages against appellee individually for alleged maladministration in the father's estate in Illinois, affecting appellant's rights as beneficiary under the will.

The counterclaim alleged that appellee had colluded with appellant's three brothers (who were the controlling stockholders in appellee-corporation) to deprive appellant of the one-fifth interest in her father's estate given her by the will; that to accomplish this object appellee agreed to assist the brothers to obtain out of the estate 550 shares of stock (some of which was stock in appellee-corporation and the balance of which was stock in other corporations in which also the brothers were controlling stockholders) at a grossly inadequate and unfair price and without the necessity of any outlay of money by them; that, as part of the scheme agreed upon, the brothers brought suits against appellee as executor and took judgments for more than $100,000 and appellee allowed the judgments to be filed as claims against the estate; that appellee then made application to the probate court for leave to sell the stocks referred to, at public sale, without having them appraised and without advising the court of their market value; that further than this a question had at that time been raised as to the executor's title to the stock, and appellee knew that a sale held under these conditions would not bring the full value of the stocks and that appellant's brothers would likely be the only bidders; that, as a result of this situation and as anticipated by appellee and appellant's brothers, the brothers were in fact the only bidders appearing at the sale and one of them purported to buy all the stocks for $70,100; that the stocks had an actual and readily realizable value at the time of over $500,000, which fact appellee knew; that, notwithstanding this fact, appellee recommended to the probate court that the sale be confirmed; and that by reason of all of the foregoing appellee had caused appellant to be deprived of $100,000 out of the estate, which would have been the value of her one-fifth share of the proceeds of the stock, if a proper sale had been made.

On the initial question, whether under Missouri law a defendant may assert a counterclaim against a foreign executor or administrator as an individual, where the latter sues in that State on a judgment recovered by him in his representative capacity in the State of his appointment, we think the answer must be in the affirmative.

Missouri follows the general rule that a foreign executor or administrator many not sue in its courts in his representative capacity for the benefit of the estate.[3] Naylor's Adm'r v. Moffatt, 29 Mo. 126; May v. Burk, 80 Mo. 675; Gregory v. McCormick, 120 Mo. 657, 25 S.W. 565, 566; Wells v. Davis, 303 Mo. 388, 261 S.W. 58; In re Thompson's Estate, 339 Mo. 410, 97 S.W.2d 93. And this disqualification, of course, is applicable also in a suit brought in the federal court in that State based on diversity of citizenship. Moore v. Mitchell, 281 U.S. 18, 24, 50 S.Ct. 175, 176, 74 L.Ed. 673, and cases there cited. But while Missouri does not recognize any right in a foreign representative to sue in that capacity in its courts for the benefit of a decedent's estate, it allows him, where he has reduced

---

ments to be so taken in that State as contrary to its public policy, but it gives full faith and credit to judgments so obtained in states where such provisions are valid. First Nat. Bank of Kansas City v. White, 220 Mo. 717, 120 S.W. 36, 132 Am.St.Rep. 612, 16 Ann.Cas. 889; Crim v. Crim, 162 Mo. 544, 63 S.W. 489, 54 L.R.A. 502, 85 Am.St.Rep. 521; O'Connell v. Smith, Mo.App., 131 S.W. 2d 730, 732.

[2] The counterclaim here involved was denominated "Second Counterclaim" in appellant's pleading. There was a "First Counterclaim" which also was stricken by the trial court, but the propriety of the court's action in relation to that counterclaim is not here involved.

[3] Missouri, however, permits a foreign administrator as such to maintain an action in that State under its death statutes, Mo.R.S.A. §§ 3652, 3653, 3654, on the theory that the recovery in such cases is not for the benefit of the estate but for the use of the beneficiaries specified in the statute and that the status of the foreign administrator is therefore in effect that of an ordinary trustee. Demattei v. Missouri-Kansas-Texas R. Co., 345 Mo. 1136, 139 S.W.2d 504.

a claim of the estate to judgment in the state of his appointment, to treat the judgment, in view of the merger of the original cause of action,[4] as his own personal effect and to sue on it in the courts of Missouri in his individual capacity. Hall v. Harrison, 21 Mo. 227, 64 Am.Dec. 225; Tittman v. Thornton, 107 Mo. 500, 17 S.W. 979, 980, 16 L.R.A. 410; Miller v. Hoover, 121 Mo.App. 568, 97 S.W. 210, 211. This legal transvestitism which is recognized in suits based on judgments is a heritage of the common law. Restatement, Conf. of Laws, § 505, Comment a, § 508, Comment b; 21 Am.Jur., Executors and Administrators, § 982, p. 927. And the court has the right in such cases to treat a styling of the plaintiff as executor or administrator as mere descriptive surplusage. Moore v. Petty, 8 Cir., 135 F. 668, 673.

■ Since, however, a foreign representative, in suing in another state on a judgment, has an individual status only and is simply a personal suitor,[5] he necessarily comes into court on the same basis and conditions as any other individual suitor. This would logically mean, among other things, that he exposes himself to any counterclaim which may exist against him personally and which is capable of being asserted as such under the practice of the forum. Under Missouri law, there may be asserted as a permissive counterclaim "any matured claim against an adverse party, not arising out of the transaction or occurrence that is the subject matter of the adverse party's claim, which the party had at the time of filing his first required pleading." Mo.Sup.Ct. Rule 3.16; Mo.R.S.A. § 847.37; Carr, Missouri Civil Procedure, §§ 166, 205, 206, 207. The same right obtains in federal practice under Federal Rules of Civil Procedure, rule 13(b), 28 U.S.C.A. following section 723c. And even though in the present case the court, while treating appellee's status as that of a personal suitor, would doubtless so far respect the trust nature of appellee's obligation in relation to the judgment as to refuse to allow any recovery by appellant on her counterclaim to be directly offset against it, this would not create any problem, for the court would have the right to simply enter separate judgments on the respective claims.

■ On the foregoing considerations, it must be held that appellant was entitled to maintain the counterclaim which she asserted against appellee, if the wrong which was its basis gave rise to a general cause of action in her favor under Illinois law.[6] The latter question, however, which is the second one presented by the appeal, must, we think, be answered in the negative.

Ill.Rev.St.1947, ch. 3, § 459, makes provision for a right of action against an executor or administrator for failure to pay money or deliver property after an order by the probate court therefor and a demand by the person entitled thereto. Appellant's cause of action is clearly not within this section, for it is not claimed that there has been any order by the probate court for any payment by the executor to appellant. The next section of the statute, § 460, provides: "An executor, administrator, or administrator to collect and the surety on his bond are liable to a successor executor, administrator, or administrator to collect, to a co-executor or co-administrator, or to any person aggrieved thereby for any mismanagement of the estate committed to his care and the successor executor, administrator, or administrator to collect or the co-executor or co-administrator, or the

---

[4] "The theory is one of merger of the old cause of action in the judgment which enures to the personal representative as an individual." Schlorer v. Mangin, D.C.E.D.N.Y., 39 F.Supp. 64, 65.

[5] The absoluteness of the recognition of a foreign representative's individual status in suing on a judgment in Missouri is indicated by the fact that the Missouri courts have held that where the foreign representative dies the administrator of his individual estate appointed in Missouri is entitled to revive the action. Tittman v. Thornton, 107 Mo. 500, 17 S.W. 979, 980, 16 L.R.A. 410.

[6] Missouri follows the general conflict-of-laws rule in tort cases that the law of the place where the wrong or injury was done determines whether a person has sustained a legal injury. Restatement, Conf. of Laws, § 378; Mitchell v. J. A. Tobin Const. Co., 236 Mo.App. 910, 159 S.W.2d 709; Taylor v. Integrity Mut. Casualty Co., 216 Mo.App. 599, 265 S. W. 881; Redfield v. New York Cent. R. Co., 8 Cir., 83 F.2d 62.

person so aggrieved, may institute and maintain an action against the executor, administrator, or administrator to collect and the surety on his bond for all money and property which have come into his possession and are withheld or may have been wasted, embezzled or misapplied and no satisfaction made therefor."

This section, however, is not intended to allow matters which have been the subject of valid orders or decrees by the probate court in the estate proceedings to be collaterally attacked in a general action outside that court against the executor or administrator personally. None of the Illinois cases to which we have been cited and none which we have found would warrant such an interpretation. On the contrary, the Supreme Court of Illinois has held that "an order and decree made by a probate court is entitled to the same protection against collateral attack as the judgments of other courts of general jurisdiction." Commissioners of Lincoln Park v. Schmidt, 395 Ill. 316, 69 N.E.2d 869, 872; Healea v. Verne, 343 Ill. 325, 175 N.E. 562, 565. This protection against collateral attack (which is necessary to enable any judicial system to succeed in its function of terminating disputes) extends under Illinois law to "each and every step taken or order made in the proceeding", where the court has proper jurisdiction of subject matter and person. Lewis v. Blumenthal, 395 Ill. 588, 71 N.E.2d 36, 39. If the court does not have proper jurisdiction in entering the order, decree or judgment, it of course is void and so is subject to collateral attack. Restatement, Judgments, § 11. Under Illinois law in some situations, the court may fail to have proper jurisdiction because of fraud, so that its order, decree or judgment will be regarded as legally invalid, but this is only where the fraud has been used to create a colorable or fictitious and not real jurisdiction of the matter determined. People v. Sterling, 357 Ill. 354, 192 N.E. 229, 233; Wood v. First Nat. Bank of Woodlawn, 383 Ill. 515, 50 N.E.2d 830, 834; Dean v. Kellogg, 394 Ill. 495, 68 N.E.2d 898, 903. Fraud ("perjury, concealment, and other chicanery") resorted to in the proceeding, beyond the point of creating foundational jurisdiction, does not make the order, decree or judgment void and subject to collateral attack. Id.

The counterclaim here alleges, as has been indicated, that appellee colluded with appellant's brothers to assist them to obtain the stock out of the estate in such a manner as to deprive appellant of her beneficial interest under the will. The scheme as set out was that the brothers were to sue and take judgments against appellee as executor and file the judgments as claims against the estate; that appellee was then to apply for authority to sell the stocks at public sale; that appellee made such application without having an appraisal made and at a time when the executor's title to the stocks had been questioned and appellee knew that the sale thereby would be chilled; that appellant's brothers were, as anticipated, the only bidders at the sale and appellee struck down the stocks to one of the brothers (all stockholders in appellee-corporation) for an unfair price and for much less than their realizable market value; and that appellee asked the probate court to confirm the sale. While the orders of the probate court allowing the brothers' judgments as claims and authorizing and subsequently confirming the sale of the stocks are not set out in the counterclaim, the facts stated make implicit the existence of such orders, and there is no dispute in the briefs as to this being the situation.

In this connection, it is to be noted that neither in the counterclaim nor in her brief has appellant presumed to charge that the judgments obtained by the brothers against the executor and the orders allowing the judgments as claims against the estate are invalid, and that the only complaint as to the judgments apparently is that they were used as the incident in the alleged scheme for having the sale held.[7] But the requesting of authority to make a public sale of

<hr />

[7] Cf. the language of the Illinois Supreme Court in Dean v. Kellogg, 394 Ill. 495, 68 N.E.2d 898, 902: "Appellants in their brief say they do not collaterally attack the judgment in favor of Kellogg, but that the complaint merely points out that the obtaining of the judgment was a part of the general scheme to convert to his own use the corporation assets as one link in the chain. If

310

assets necessary to satisfy valid claims against an estate cannot make the court's jurisdiction to authorize such a sale colorable or fictitious so as to leave the order of authorization subject to collateral attack, merely because the executor or administrator may hope through the holding of the sale to further also some outside aim or end. And the same is true of the court's jurisdiction in confirming the sale. The probate court has real and not merely colorable jurisdiction to approve a sale authorized to satisfy valid claims against the estate, where the statutory prescriptions in the holding of the sale have been met, even though the executor or administrator may have been guilty of misconduct, such as assisting in chilling the sale. Such conduct does not leave the order of confirmation or approval subject to collateral attack.

Appellant, however, seeks to escape the effect of what has been said above by arguing that she is not making a collateral attack on any of the probate court's orders, in that her action, as she says in her brief, is simply one "to recover damages against an executor who acted in bad faith in selling certain assets of the estate for less than their real value." But the probate court's authorization and subsequent approval of a sale of assets, on proper jurisdiction, are intended, we think, in the codified scheme of the Illinois statutes for settling estates, to make the fairness of the sale price impervious to collateral scrutiny in another court for any purpose, such as appellant is attempting to have done here.

In other words, under Illinois law, where a sale of assets has been authorized and approved by a probate court, with proper jurisdiction over subject matter and person, any attempt by a beneficiary of the estate to bring a plenary action against the executor or administrator in another court for having negligently or fraudulently sold such assets for less than their fair and realizable value is a collateral attack upon the probate court's orders and cannot be maintained.[8] Ill.Rev.St.1947, ch. 3, § 460, quoted above is not intended, in our opinion, to afford any such right of general outside action.[9]

This, of course, does not mean that the wrong in the present case, if one has been done, is to be regarded as without remedy under Illinois law. The remedy lies in the probate court itself as part of the estate proceedings. The probate court in Illinois is a court of continuing jurisdiction and of general equitable powers in administering decedents' estates. In re Blyman's Estate, 382 Ill. 520, 47 N.E.2d 710; Hodson v. Hodson, 277 Ill. 137, 115 N.E. 159. It can compel an executor or administrator to account at any time and may enter judgment against him for loss occasioned to the estate by his wrongful acts. Christy v. Christy, 225 Ill. 547, 80 N.E. 242, on which appellant relies in her brief to show the liability of an executor or administrator for fraud or negligence in the sale of assets, arose on final account in the probate court and was not a plenary action. Marshall v. Coleman, 187 Ill. 556, 58 N.E. 628;

this be deemed a sufficient charge it still would fail to state a cause of action if one of the essential links in the chain, viz., the judgment, was not invalid. Merely by calling the judgment a part of a fraudulent scheme is not sufficient, because, if the judgment were valid, merely calling it a scheme would not render it invalid. If Kellogg had a legal debt and lawfully reduced it to judgment, levied upon the Seedtown assets and caused a sale, it cannot be impeached merely because he insisted upon a satisfaction of the judgment the same as any other creditor might do."

8 Cf. Restatement, Judgments, § 11, Comment a: "So also, where a person whose property has been levied upon and sold in execution of a judgment brings an action against the purchaser on the execution sale to recover the property or its value, this is a collateral attack upon the judgment."

9 Doubtless Ill.Rev.St.1947, ch. 3, § 460, affords a right of plenary action to an heir or beneficiary against an administrator or executor in certain situations, but these we need not attempt to enumerate. Merely to illustrate, if a will gives specific property to a beneficiary or if an order of the probate court directs the executor or administrator to turn over specific property to an heir, and the executor or administrator has been guilty of negligence in caring for it while it was in his hands, the beneficiary or heir probably would be entitled to maintain a plenary action for the injury done the property.

Corrington v. Corrington, 124 Ill. 363, 16 N.E. 252, and Tarpey v. Dake, 322 Ill.App. 270, 54 N.E.2d 222, are other instances of where the executor's or administrator's liability for his administration of the estate was dealt with on objections to the allowance of his account in the probate court. That, we think, is the scope of the existing remedy under the Illinois statutes in such a situation as is here involved. As previously observed, no Illinois decision has been cited to us, and we have found none, that in the posture of the estate and in relation to the orders made by the probate court indicates a right in appellant to maintain here the plenary action which is the subject of her counterclaim.

Affirmed.