HORNING *v.* LOUIS PETERS & CO.

1. CORPORATIONS—STOCK AND STOCKHOLDERS—ACTION BY STOCK-HOLDER—TRUSTEE IN BANKRUPTCY.

Where a contract was made primarily for the benefit of a corporation, and only indirectly for the benefit of the stockholders, before a stockholder may prosecute a claim based upon its breach, a demand must first be made upon the trustee in bankruptcy to commence suit.

2. SAME—CONTRACTS—REORGANIZATION—INTENT.

Where certain creditors of a corporation agreed to accept preferred stock for a part of their claims and give time

on the balance, assenting to a plan for reorganization and agreeing to furnish "moneys necessarily required for the operation and conduct of the business," *held*, to be their intention to limit their liability to the amount of preferred stock proposed to be taken, and to the extension of the time granted the corporation upon the balance of their several claims.

3. SAME—CONTRACTS—BREACH.

Failure to furnish additional capital for expansion of the business of the corporation did not amount to a breach of the contract, in view of the recital in the plan of reorganization that it was not the purpose to extend the business; there being no evidence of any demand for additional capital by the board of directors, nor fraud or bad faith on the part of the board.

Error to Wayne; Codd, J. Submitted April 18, 1918. (Docket No. 7.) Decided June 3, 1918.

Case by Emma C. Horning against Louis Peters & Company and others for breach of an alleged trust agreement. Judgment for defendants on a directed verdict. Plaintiff brings error. Affirmed.

*Moloney & Mendelsohn,* for appellant.

*Lyle G. Younglove* and *Millis, Griffin, Seely & Streeter,* for appellees.

In this action plaintiff seeks to recover from defendants the sum of $9,500. Her alleged right of action grows out of a very complicated state of facts which may be briefly stated as follows:

In the year 1900 or 1901, the corporation of Gustav A. Moebs & Co. was formed with a capital stock of $75,000, all of which stock was and continued to be the property of Gustav A. Moebs. The business of the corporation was the manufacture and sale of cigars, and it continued to operate successfully until the panic of 1907, at which time through speculation in tobacco it was caught with some $300,000 worth on hand.

The price of tobacco decreased and the company was obliged to and did thereafter pay heavy carrying charges upon the same; these charges at times amounting to as much as $20,000 per year. Affairs continued to grow worse until the summer of 1910, when it became evident that something must be done to prevent the liquidation of the corporation. On the 19th day of August, 1910, Gustav A. Moebs entered into a contract with the corporation in which it is recited that the corporation "has a large amount of outstanding debts which it has not an amount of liquid assets to satisfy"; that certain creditors of the corporation "have heretofore agreed to postpone the time of payment of their respective claims." Moebs then transfers and assigns to the corporation life insurance policies upon his life in the aggregate sum of $100,000. The agreement recites:

"All of which said policies are payable to the estate of said first party, and does hereby direct that the cash surrender value of said policies or in the event of death of said first party, the face of said first policies shall be paid to the said second party, on condition nevertheless, that said second party shall use the cash surrender value of said policies, or in the event of the death of said first party, the face of the policies, in paying the indebtedness of the said second party to such of its creditors as have heretofore agreed or shall have hereafter agreed to postpone the time of payment of their respective claims upon terms satisfactory to said second party, and shall use the same only after all the other assets of said second party have been exhausted and applied in payment of such indebtedness and only to the extent necessary to satisfy such indebtedness; and all policies not so used and the balance of any policy or policies, if any shall remain, shall be paid to said first party, or, in the event of his death, to his estate."

The contract further provides for the assignment by Moebs to the corporation of all the shares of stock

of the Cadillac Cigar Co. as security for the debt owed by the Cadillac Cigar Co. to the corporation. It is apparent from the record that at the time Moebs assigned these life insurance policies to the corporation the corporation was heavily involved and the creditors insisting upon payment. The business was continued thereafter by Moebs but during the fall of 1910 several suits were commenced and it became evident that some further relief must be obtained if the corporation was to continue in business. To this end a so-called "plan of reorganization of the G. A. Moebs & Co." was prepared on December 8, 1910. It is therein recited that on that day the indebtedness of the corporation amounted to $261,629.65, while the assets amounted to $272,788. Of the indebtedness nearly one-half was due to the corporations defendants herein. The plan of reorganization contemplated the formation of a committee who would hold and vote all the common stock of the corporation and that a new board of directors consisting of J. H. Duys (representing H. Duys & Co.), M. R. Hoffman (representing the Hoffman Leaf Tobacco Co.), A. W. Davis (representing Louis Peters & Co.), A. B. Hostetter and Gustav A. Moebs should be elected. The plan recites:

"It is not the intention or purpose of the directors to expand the business, but rather to reduce it to such proportions as will permit, without serious injury to the company, a part liquidation of assets and liabilities."

The creditors of the corporation are then classified into six classes. Provision is made for the payment of some small as well as preferred creditors in cash.

Class D. was composed of general creditors, the claims aggregating about $176,000, of which the three defendant corporations held about $126,000. With reference to these claims it was provided that the holders thereof should accept 66 2/3 per cent. of their

face value in preferred stock of the Gustav A. Moebs Co. The balance of 33 1/3 per cent. was to be represented by notes—

"which are to mature in such amounts and at such times as the board of directors deem best suited for the working out of the success of their plan."

Section (H) of said plan is as follows:

"In consideration of and for all of the creditors excepting the benefits of the foregoing plan, moneys necessarily required for the operation and conduct of the business from November 1, 1910, on, as well as to keep the insurance policies in force, have been agreed to be supplied by the Hoffman Leaf Tobacco Company, Louis Peters & Company and H. Duys & Company. The advances to be made by each are to be in amounts pro rata with their claims as of November 1st. Notes, with interest, are to be issued for any moneys advanced by the aforesaid mentioned parties."

Other provisions follow and it is then recited:

"Any action that is to be done hereunder by the directors of the Moebs Company or any of the individuals or companies hereinbefore mentioned, will be done gratis, and no charge of any kind will be made except actual cash disbursed."

The plan itself is signed by Gustav A. Moebs. Many copies seem to have been prepared and an underwriting to be signed by the individual creditors was placed thereon in which appeared the amount of the debt of the creditor signing the same; his agreement to accept preferred stock and notes according to the plan of reorganization. This acceptance contained the following:

"It is understood that no personal liability is to be imposed upon me, nor are any of the aforesaid mentioned individuals, in undertaking to accomplish said plan, to incur or be subjected to any liability while they are proceeding in good faith. If said plan should not be declared operative, then the liability of the

aforesaid mentioned parties is terminated by their returning to me the securities which I have under this instrument conveyed and assigned to them."

On December 9, 1910, the day following the date of the so-called plan for reorganization, the following agreement was executed:

"KNOW ALL MEN BY THESE PRESENTS, That

"Whereas, the undersigned creditors of Gustav A. Moebs & Company, a Michigan corporation, have contemporaneously herewith entered into a certain agreement or plan for the reorganization of said corporation, under and by which the undersigned are each to receive and accept 66 2/3% of the face of their claims against said corporation in the preferred stock thereof, which shall be entitled to an annual dividend of six (6) per cent., which shall be cumulative and payable before any dividend shall be set apart or paid on the common stock; and

"Whereas, Gustav A. Moebs is the beneficial owner of all of the common capital stock authorized and issued by said corporation, and, for the better carrying out of said plan of reorganization and the conduct and carrying on of the business of said corporation as and when reorganized, said Gustav A. Moebs has caused all of said common capital stock to be transferred and delivered to John H. Duys, Michael R. Hoffman, Anna B. Hostetter, Albert W. Davis and himself, said Gustav A. Moebs, as voting trustees under and by virtue of a certain voting trust agreement dated December 9, 1910, which said voting trust agreement was made and executed in pursuance of such plan or agreement of reorganization; and

"Whereas, for the better security of the creditors of said corporation and for the purpose of increasing the assets of said corporation for the better protection and security of said preferred stock, said Gustav A. Moebs did, by a certain agreement dated August 19, 1910, transfer and deliver to said corporation, certain policies of insurance issued upon the life of said Gustav A. Moebs, which said policies and the terms and conditions upon which the same were so transferred and delivered, are set forth more fully in said

agreement. And the said Gustav A. Moebs has also transferred to the said corporation absolutely all of the capital stock of the Cadillac Cigar Company; and

"Whereas, it is deemed impracticable for the said corporation to pay dividends upon the preferred stock held by the undersigned at the present time, or for some time in the future, and it is deemed to be for the best interests of the undersigned as such creditors and preferred stockholders and of the said corporation and said Gustav A. Moebs as well;

"Now therefore, the undersigned do hereby severally agree with each other and with the said corporation and said Gustav A. Moebs, that they do each hereby waive and forego the payment of any and all dividends which shall accrue to them during the three years immediately succeeding the issue of such preferred stock at the time when such dividends shall become due and payable; and do further severally agree that the time of payment of each such dividend may be and the same hereby is deferred and extended until after the expiration of said three (3) year period.

"The undersigned further agree that the said Gustav A. Moebs shall have the right and privilege, at his option, within thirty (30) days after the expiration of said three (3) year period, to pay the dividends which shall have accrued upon said preferred stock and shall have been earned thereon, at their face, without interest or other charge on account of the extension of the time of payment thereof hereby granted, in the common capital stock of said corporation, at par, in which case, the sums which otherwise would have been paid from the treasury of said company on account of said dividends, shall remain in the treasury of said company, to be used and applied as the board of directors may determine. But, if at the end of said three (3) year period the earnings of the corporation shall not have been sufficient to declare and pay the dividends upon said preferred stock in full, then said Gustav A. Moebs shall have the option aforesaid as to such of said dividends as shall have been earned and as to the dividends, or such portion thereof as shall not have been earned, he shall transfer and deliver to the holders of such preferred

stock common capital stock of the company at par, in an amount equal to the dividends, or portion thereof, which shall have accrued upon said preferred stock, but shall not have been earned by said company; which common capital stock so transferred and delivered shall be applied in payment of the dividends upon such preferred stock when declared.

"In Witness Whereof, we have hereunto set our hands this 9th day of December, A. D. 1910.

[Signed]    "JOHN H. DUYS,
"GUSTAV A. MOEBS,
"AMOS B. HOSTETTER,
"ALBERT W. DAVIS,
"MICHAEL R. HOFFMAN."

And apparently upon a later date the following:

"KNOW ALL MEN BY THESE PRESENTS, That

"Whereas, several plans have been suggested from time to time for the reorganization of Gustav A. Moebs & Company, a Michigan corporation, and

"Whereas, a number of papers have been executed by Gustav A. Moebs and different creditors from which uncertainty may arise as to the exact terms and basis upon which the parties have finally agreed upon a reorganization of said Gustav A. Moebs & Company;

"Now, therefore, the undersigned do hereby severally acknowledge and admit that the rights and liabilities of each of the parties as to each of the others and that the reorganization and future conduct of the business of Gustav A. Moebs & Company are based upon the following instruments:

"1. A certain agreement dated August 19, 1910, made by Gustav A. Moebs of the first part to said Gustav A. Moebs & Company of the second part, in and by which certain insurance policies are transferred to said company upon certain terms and conditions therein set forth, as is also the capital stock of the Cadillac Cigar Company owned by said Gustav A. Moebs.

"2. A certain paper entitled 'Plan for Reorganization of Gustav A. Moebs & Company, a Michigan corporation,' dated December 8, 1910, of which there are a number of copies.

"3. A certain agreement dated December 8, 1910, made by certain of the creditors of said company, who have agreed to accept preferred stock in said company, in payment of their claims as such creditors and said Gustav A. Moebs respecting the payments of dividends upon the preferred stock to be issued to them.

"That said several instruments shall be construed as though made in the order above set forth, and insofar as any of the provisions of any of the same may be in conflict with any of the provisions of either of the others, the provision in the instrument first above mentioned shall be deemed to have been modified by the conflicting provision in the instrument later above mentioned; and that so construed, all of the provisions of each of said instruments are in force and effect, except that the stock in the Cadillac Cigar Company mentioned in said agreement first above mentioned has since been transferred to said Gustav A. Moebs & Company absolutely.

[Signed]     "JOHN H. DUYS,
              "GUSTAV A. MOEBS,
              "AMOS B. HOSTETTER,
              "ALBERT W. DAVIS,
              "MICHAEL R. HOFFMAN."

All the defendants and many others accepted the plan and the business was continued for nearly three years thereafter. During this period Gustav A. Moebs continued as president of the company and was active in both the manufacturing and sales departments thereof. Despite the relief afforded the corporation by the addition to its capital of something over $100,000 through the issuance of preferred stock, the company became so embarrassed that in the year 1913 it was determined by the unanimous vote of the board of directors to place it in voluntary bankruptcy, and, although the record fails to disclose the amount of the debts at the time the bankruptcy proceedings were started, it is apparent that the assets realized an amount insufficient to pay the same. As a result of

the bankruptcy proceedings not only the common but the preferred stock was rendered valueless.

Plaintiff is one of several sisters of Gustav A. Moebs. All of the said sisters were creditors of the Gustav A. Moebs Co. in December, 1910, when the business was reorganized. The plaintiff and her sisters acting under the advice of their brother, Gustav A. Moebs, and of the late Judge Morse Rohnert surrendered their claims against the corporation and accepted in lieu thereof preferred stock to the full amount of their several claims. Interest was paid to them on said stock until July or August, 1913. Upon the trial evidence was introduced or offered tending to show that if the three defendant corporations had furnished more money for the conduct of the business, it could or might have been continued successfully.

The learned circuit judge who heard the case directed a verdict for the defendants, held that under paragraph (H) of the plan of reorganization no personal liability attached to the defendants even though there had been a failure to furnish money thereunder, and further that no evidence had been introduced from which a jury upon a breach of the contract and the subsequent failure of the corporation could agree upon any fixed measure of damages; that the jury would have to conjecture as to what caused the subsequent failure and the loss to plaintiff. Counsel for plaintiff and appellant state their claims as follows:

"(1) The plaintiff claims that by the acceptance of Exhibit 1, the defendants obligated themselves to furnish sufficient moneys with which to operate the said business, and that this obligation was one individually to each of the parties accepting the reorganization plan.

"(2) That a breach of the contract was made by the defendants in not furnishing this amount or taking advantage of the alternative condition in paragraph "H" under which they had the right to say,

within a reasonable time, that the reorganization plan could not be carried out, and returning to plaintiff her original evidence of indebtedness against the company.

"(3) That it was a question of fact for the jury to determine, under all of the circumstances, whether the defendants used such reasonable effort in the conduct of the business as to make it a commercial success within the meaning of the contract."

BROOKE, J. (*after stating the facts*). It is, we think, apparent that all the contracts above outlined or set forth must be construed together to ascertain the intention of the parties. A consideration of their contents and the testimony introduced leads to the conclusion that in December, 1910, the Gustav A. Moebs Co. was in such financial straits that it was impossible for it to continue in business unless immediate relief was forthcoming. While the nominal assets at that time slightly exceeded the liabilities it cannot be doubted that a liquidation of the concern at that time would not have produced funds sufficient in amount to have cared for the liabilities. Had it been possible at that time to have secured practically the full amount of the indebtedness through liquidation, it is inconceivable that creditors representing upwards of $100,000 would have consented to accept two-thirds of the amount of their several debts in new preferred stock of the corporation and long-time notes for the balance. Confronted, then, with the alternative of furnishing a large amount of additional capital or taking an immediate loss, the creditors chose the former. Construing all the contracts together, we think it is plain that such agreements as were entered into were made with the corporation, the Gustav A. Moebs Co.; that the money to be advanced by the defendants or any of them was to be advanced to the corporation, for its benefit and in the hope that with the additional capital and the advice and co-operation of the individual defendants representing the large creditors, the in-

debtedness might ultimately be paid. The contract, then, having been made primarily for the benefit of the corporation and only secondarily or indirectly for the benefit of its stockholders, such stockholders including plaintiff cannot prosecute a claim based upon its breach without first making a demand upon the receiver (in this case the trustee in bankruptcy), to commence suit. *Talbot* v. *Scripps*, 31 Mich. 268. The evidence is undisputed that no such demand was ever made.

Coming to the second question raised by counsel for appellant, *i.e.*, whether there was a breach of the contract to furnish, "moneys necessarily required for the operation and conduct of the business," we find that this undertaking on the part of the three corporate defendants appears in the so-called plan for reorganization and is executed by Gustav A. Moebs only. It is true that the underwriting attached to said plan and executed by each of the defendants recites that the signer of the underwriting "does hereby assent to the plan for reorganization of the affairs of the company as outlined in a written instrument dated December 8, 1910, hereto attached," but this underwriting also contains the stipulation heretofore set forth to the effect that no personal liability is to be imposed upon the signer in undertaking to accomplish the plan. We have no difficulty in reaching the conclusion that it was the intention of the signers to limit their liability strictly to the investment they proposed to make in the preferred stock of the corporation and to the extension of the time granted the corporation upon the balance of their several claims, but even assuming that the contract in question was made directly with the plaintiff and that the limitation of liability referred, as contended by plaintiff, simply to the initial steps of carrying out the reorganization and had no bearing upon the continuing obligation of the defendants

to furnish capital to the corporation, there is in our opinion no competent evidence either introduced or offered tending to support the contention that there was a breach of such obligation. Upon the completion of the reorganization, the Hoffman Leaf Tobacco Company accepted paper for approximately $31,000. At the time of the insolvency this indebtedness had increased to approximately $84,000. In the meantime Hoffman had indorsed the paper of the Moebs Company for $10,000, and the money for the conduct of the business had been secured thereon. Peters & Company furnished credit additional to that existing at the time of reorganization to the amount of approximately $1,000 so that during the three years the corporation was operated after its reorganization additional credit was furnished by one or other of the defendants to the amount of approximately $64,000. This was a sum nearly equal in amount to the entire common capital stock of the corporation. The only instance pointed out by plaintiff in which a suggestion was made for additional capital, which was not complied with, occurred in January or February, 1911. At that time it was suggested by Mr. Moebs and Mr. Myers, the secretary, that $25,000 should be made available for corporate uses. It was finally determined that $10,000 should be raised through the indorsement of defendant Hoffman. It is claimed by plaintiff that the failure of the defendants to furnish this additional capital worked to the injury of the corporation. Mr. Myers, the secretary, was asked:

"*Q.* Now, Mr. Myers, will you state in what way was the business handicapped through a lack of money during that period of thirteen months?

"*A.* We did not have sufficient traveling men and we could not do the missionary work necessary to spread out the business, take chances in our cigars, repeat in different localities."

The same witness testified:

"*A.* Yes, that business was done with a pretty sick company and it was going to require a long period of convalescence before we could get it on its feet."

Mr. Moebs while on the stand being interrogated as to the value of the missionary work in the business testified:

"*Q.* Can it be made so that you will know that it is or is not profitable in the future?
"*A.* It is a chance you take; it is a matter of judgment.
"*Q.* It is a matter that you can try out?
"*A.* You try out; yes.
"*Q.* And you tried Lavine out in that territory and it did not prove successful?
"*A.* Hardly. It *might* have been a success if the necessary advertising and specialty work was done and carried out."

In view of the fact that the plan of reorganization recited that it was not the intention or purpose to extend the business but rather to reduce it, and inasmuch as the only complaint made by plaintiff is that additional money was not furnished for the purpose of expansion or so-called missionary work, it would seem that by no stretch of the imagination can the defendants be charged with a breach of their obligation to furnish necessary additional capital.

The affairs of this corporation were at all times under the control of a board of directors of whom Gustav A. Moebs was one. The obligation of the defendants to furnish necessary additional capital was, of course, in any event, limited to furnishing it as and when in the judgment of the board of directors, acting in good faith and without fraud, the same became necessary. There is no evidence in the record of a demand upon the defendants for more capital or credit made by the board of directors and refused by defend-

ants, nor is there any evidence of fraud or bad faith on the part of the board.

We are of opinion that a verdict for the defendants was properly directed and the judgment is therefore affirmed.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, FELLOWS, STONE, and KUHN, JJ., concurred.