DEAN v. KELLOGG.

1. EQUITY—JURISDICTION—PRINCIPAL STOCKHOLDER OF FOREIGN COR-
PORATION.
    Since the process of the chancery court in this State, either
    personal or constructive, is confined to the limits of this State
    so far as acquiring personal jurisdiction over nonresidents is
    concerned, dismissal of bill by stockholders and creditors of
    foreign corporations praying for an accounting, retransfer
    of assets wrongfully misappropriated, an injunction, and ap-
    pointment of a receiver for the corporations held, proper, as to
    president, its principal stockholder, who is alleged to have
    stripped the corporations of their assets, where he was not
    served within this State and has not appeared.

2. CORPORATIONS—STOCKHOLDERS' DERIVATIVE SUIT—JURISDICTION
OF EQUITY.
    At the instance of a single stockholder a court of equity has
    the power, in case of fraud, abuse of trust, or misappropria-
    tion of corporation funds, to grant relief and compel a restitu-
    tion.

3. SAME—STOCKHOLDERS' DERIVATIVE SUIT.
    In the usual stockholders' derivative suit, the stockholders as
    plaintiffs are permitted to instigate the action in a court of
    equity to enforce a claim of the corporation and any recovery
    runs in favor of the corporation as the stockholders do not sue
    in their own right but derive only an incidental benefit.

4. SAME—STOCKHOLDERS' DERIVATIVE SUIT—ACCOUNTING—PARTIES.
    In a stockholders' derivative suit, if defendants must account,
    the accounting is to the corporation and not to the stockholders;
    hence, as to the defendants charged with defrauding it, the
    corporation is an indispensable party.

5. SAME—JUDGMENT—PARTIES.
    In a stockholders' derivative suit the decree must protect the
    defendants against any further suit by the corporation, hence
    it must properly be made a party to the action.

6. EQUITY—JUDGMENT FOR ONE DEFENDANT AGAINST OTHER DE-
FENDANTS.
    The flexibility of equity procedure permits an affirmative judg-

ment to be entered in favor of one defendant against other defendants.

7. CORPORATIONS—STOCKHOLDERS' DERIVATIVE SUIT—PARTIES—JURISDICTION.

To be made a party in a stockholders' derivative suit so as to make the adjudication therein final, the corporation must be subject to the jurisdiction and cannot be brought in the State by extraterritorial or constructive service.

8. SAME—STOCKHOLDERS' DERIVATIVE SUIT—JURISDICTION—SERVICE WITHIN THIS STATE.

A stockholders' derivative suit brought on behalf of foreign corporation fails for want of jurisdiction where no service of process was made upon an agent doing business on its behalf in this State.

9. ACTION—PROCEEDING IN REM.

In one sense a proceeding *in rem* is one taken directly against property and has for its object the disposition of the property without reference to the title of individual claimants, although in a larger and more general sense the term is applied to acts between parties where the direct object is to reach and dispose of property owned by them or of some interest therein, such as attachment of debtors' property, partition of real estate, foreclosure of mortgages, and enforcement of liens.

10. CORPORATIONS—STOCKHOLDERS' DERIVATIVE SUIT—PROCEEDING IN PERSONAM.

A derivative suit by stockholders of foreign corporations commenced as though it were the usual equity suit for accounting in which retransfer of assets wrongfully appropriated, an injunction and the appointment of receivers for unserved and nonsubmitting foreign beneficiary corporations was also prayed may not be maintained as a proceeding *in rem* and adjudication made in favor of such corporations, the real parties in interest, as it is essential to the exercise of jurisdiction in such suit that it be *in personam,* there being no *res* in the control of the court.

11. APPEAL AND ERROR—QUESTIONS REVIEWABLE—JURISDICTION.

Questions as to the right of a court to interfere with the internal conduct of the affairs of a foreign corporation, validity of a foreign default judgment upon such corporation, validity of dissolution proceedings of another foreign corporation, plaintiffs' laches and issue of multifariousness are not decided on appeal from order dismissing bill of complaint where court

has no jurisdiction of either corporation or party who is alleged to have wrongfully misappropriated assets.

12. MANDAMUS—DISCOVERY—JURISDICTION—STOCKHOLDERS' DERIVATIVE SUIT.

Plaintiffs, seeking to maintain stockholders' derivative suit, who had not obtained jurisdiction of beneficiary foreign corporations nor of party who is alleged to have misappropriated their assets, are not entitled to writ of mandamus to order the trial court to grant petition for discovery.

Appeal from Calhoun; Hatch (Blaine W.), J. Submitted April 3, 1940. (Docket Nos. 25, 26, Calendar Nos. 40,723, 40,826.) Decided June 19, 1940.

Bill by Julia E. Dean and others against John L. Kellogg, W. K. Kellogg, Kellogg Company, a Delaware corporation, Warren-Teed Seed Company, a Nevada corporation, and Seedtown Products, Incorporated, a Delaware corporation, for an accounting, appointment of a receiver, an injunction, and other relief. From orders granting motions to dismiss by defendants Kellogg Company and W. K. Kellogg and denying plaintiffs' motion for discovery, plaintiffs take separate appeals. Appeals consolidated. Affirmed.

*Frederick McGraw, Clarence A. Snyder*, and *E. C. Frank Meier* (*William J. Oldani*, of counsel), for plaintiffs.

*Burritt Hamilton* (*Edwin L. Harding*, of counsel), for defendants Kellogg Company and W. K. Kellogg.

BUTZEL, J. We are reviewing on one record the dismissal of a stockholders' derivative suit and the denial of a petition for discovery.

Plaintiffs filed a bill of complaint in chancery on behalf of themselves and any other stockholders and creditors of Seedtown Products, Inc., and Warren-

Teed Seed Company who might care to join in and contribute to the expense of the proceedings. The trial court granted a motion to dismiss on the grounds of lack of jurisdiction, laches and multifariousness. We shall summarize the allegations of the lengthy bill. Plaintiffs are the owners of over 130,-000 shares in a Nevada corporation now known as the Warren-Teed Seed Company, hereinafter referred to as Warren-Teed. It is joined as a party defendant. Defendant Seedtown Products, Inc., was organized under the laws of Delaware, and shall hereafter be referred to as Seedtown. Defendant Kellogg Company, a Delaware corporation, maintains an office in Battle Creek, Michigan. Battle Creek is also the residence of defendant W. K. Kellogg. Defendant John L. Kellogg is stated in the affidavit of publication to be a resident of Chicago, Illinois; his residence is not stated in the bill of complaint. Defendant John L. Kellogg incorporated the Kellogg Terminal Warehouses, Inc., in Illinois. It maintained an office at the same address as used by Warren-Teed and Seedtown in Chicago.

Shortly after December 1, 1930, after Seedtown had qualified its stock for sale in Illinois, an agreement was made by Warren-Teed and Seedtown whereby the stock of Seedtown was to be exchanged for the assets of Warren-Teed, and each stockholder of Warren-Teed was accorded the right to exchange his stock on a share for share basis for stock of a like class in Seedtown. It is charged that the shares of Seedtown were never issued and delivered to plaintiffs because of the persistent delay of John L. Kellogg.

A large block of class A stock of Seedtown was exchanged for all the outstanding stock of Kellogg Terminal Warehouses, Inc., not a party to this suit.

Plaintiffs alleged that in 1924 John L. Kellogg be-

gan to acquire stock in Warren-Teed, and that by 1928 he had a majority interest therein. It is charged that through "all manner of intricacies and schemes known to corporate legerdemain" John L. Kellogg stripped both Warren-Teed and Seedtown of all their assets. He is alleged to have obtained by fraud in 1931 a default judgment in Illinois against Seedtown in the sum of $220,006.90.

In December, 1931, plaintiffs received a letter addressed to the stockholders of Warren-Teed, signed by John L. Kellogg, president, stating that he had made a net cash outlay of over $1,200,000 during a period of two years, for the purchase of stock in, and advances to, the corporation, and that he had not received in return any amounts for salary, dividends or other remuneration; that he had spared neither time nor money in the effort to make the business a success; that he felt no duty to continue a business that could not be made a commercial success. He requested proxies to vote for dissolution and winding up of the affairs of Warren-Teed at a stockholders' meeting to be held two weeks later. Enclosed therewith was another letter to the stockholders of Seedtown, signed by "R. Winter, President," stating that there had been little response to the attempted financing of the company through a public stock offering; that Kellogg had primarily met the expenses of the company; that there had been a loss of over $300,000, of which about 90 per cent. was from the seed and grain business, and about 10 per cent. from Kellogg Terminal Warehouses, Inc., a wholly owned subsidiary of Seedtown; that the company owed creditors over $110,000 in addition to the default judgment for $220,006.90 held by Kellogg. The letter further advised that Seedtown's current assets were slightly over $41,000; that its patents and processes had proved to be of no commercial value; that the stock

of the Kellogg Terminal Warehouses, Inc., its wholly owned subsidiary, was of problematical value, for there was a mortgage of $875,000 on its property, and its fixed assets had declined with the current decline in real estate values, and that with current assets of $891,891.62 and current liabilities of $238,-681.36, the shares of Kellogg Terminal Warehouses, Inc., had only nominal value. Prompt dissolution and winding up of Seedtown's affairs was recommended.

The bill further alleged that a sale of the assets of Seedtown took place, resulting in the purchase by John L. Kellogg, as a judgment creditor, of all the assets. Although notice of dissolution was filed in Delaware, plaintiffs claim that Seedtown was never legally dissolved in a manner binding on plaintiffs or the other stockholders by a two-thirds vote as required by the laws of Delaware, and that the dissolution was brought about by false, fraudulent and illegal returns to the secretary of State of Delaware, and that for this reason Seedtown is a *de facto,* if not a *de jure,* corporation doing business in Michigan.

It is further claimed that John L. Kellogg induced an inventor in the employ of Warren-Teed to become Kellogg's personal employee, and that valuable inventions and processes discovered were appropriated by Kellogg and other corporations controlled by him, in breach of his fiduciary duties to Warren-Teed. It is stated that the patents issued thereon rightfully belonged to the plaintiffs as stockholders of Seedtown. Plaintiffs charge that by some manner or means unknown to plaintiffs, the patents, processes and machinery, et cetera, were acquired by John L. Kellogg and by him transferred to W. K. Kellogg or the Kellogg Company, and that since June 1, 1932, the Kellogg Company, John L. Kellogg and

W..K. Kellogg have been using these assets to their great advantage. These properties are alleged to be worth many millions of dollars and have been the basis for the establishment of an enormous business that has brought very large profits, and that Seedtown and Warren-Teed have been damaged in the amount of $20,000,000. It is charged that the transferees knew of the illegal methods of acquisition of these assets.

Plaintiffs prayed for an accounting, retransfer of the assets wrongfully misappropriated, an injunction, a receiver for Warren-Teed and Seedtown, and general relief. Plaintiffs' petition for discovery was denied without prejudice to a renewal thereof after defendants filed their plea or answer. The trial court granted a motion to dismiss on the grounds that it lacked jurisdiction of essential .parties, that the bill was multifarious, and that plaintiffs' inexcusable laches barred equitable relief.

Only W. K. Kellogg and Kellogg Company were personally served with process in the State of Michigan; an order of publication was made as to defendants John L. Kellogg, Warren-Teed Seed Company, and Seedtown Products, Inc. They have not appeared.

The question of jurisdiction over necessary parties to the suit or of the subject of action is controlling. Defendant John L. Kellogg, a resident of Illinois, is asked to account for alleged wrongs to Warren-Teed and Seedtown; he has not been personally served within the State, nor has he submitted to the jurisdiction of this court. We are powerless to render any personal decree against him; our process, personal or constructive, is confined to the limits of this State so far as acquiring personal jurisdiction over nonresidents. *Outhwite* v. *Porter,* 13 Mich. 533; *McEwan* v. *Zimmer,* 38 Mich. 765 (31 Am. Rep. 332); *Booth* v. *Connecticut Mutual Life Ins. Co.,* 43

Mich. 299; *Howard* v. *Coon,* 93 Mich. 442; *Stewart* v. *Eaton,* 287 Mich. 466, 477 (120 A. L. R. 1354); *Pennoyer* v. *Neff,* 95 U. S. 714. The dismissal of the bill was correct as to him.

A more difficult problem is presented as to our jurisdiction to adjudicate rights belonging to Warren-Teed and Seedtown. "There is no doubt of the power of a court of equity, in case of fraud, abuse of trust, or misappropriation of corporation funds, at the instance of a single stockholder, to grant relief, and compel a restitution." *Miner* v. *Belle Isle Ice Co.,* 93 Mich. 97, 112 (17 L. R. A. 412). In the usual stockholders' derivative suit, the stockholders as plaintiffs are permitted to instigate the action in a court of equity to enforce a claim of the corporation. *Foss* v. *Harbottle,* 2 Hare's Ch. 461 (67 Eng. Rep. 189); *Hawes* v. *Oakland,* 104 U. S. 450. Any recovery runs in favor of the corporation, for the shareholders do not sue in their own right. *Talbot* v. *Scripps,* 31 Mich. 268; *Horning* v. *Louis Peters & Co.,* 202 Mich. 140; *Curtiss* v. *Wilmarth,* 254 Mich. 242. They derive only an incidental benefit. *Davenport* v. *Dows,* 85 U. S. (18 Wall.) 626. If the defendants account, it must be to the corporation and not to the shareholders. As to the defendants charged with defrauding it, the corporation is an indispensable party. *Cicotte* v. *Anciaux,* 53 Mich. 227; *Coxe* v. *Hart,* 53 Mich. 557; *McMillan* v. *Miller,* 177 Mich. 511. Furthermore, the decree must protect the defendants against any further suit by the corporation, and this will not be true unless it properly be made a party to the action. *Davenport* v. *Dows, supra; Baltimore & Ohio R. Co.* v. *City of Parkersburg,* 268 U. S. 35 (45 Sup. Ct. 382); *Watts* v. *Vanderbilt* (C. C. A.), 45 Fed. (2d) 968; *Philipbar* v. *Derby* (C. C. A.), 85 Fed. (2d) 27. The usual American practice is to name the beneficiary corporation as a party defend-

ant, although in substance it is a party plaintiff; the flexibility of equity procedure permits an affirmative judgment to be entered in favor of one defendant against other defendants. To be made a party so as to make the adjudication final, it must be subject to the jurisdiction and cannot be brought in the State by extraterritorial or constructive service. *Geer* v. *Mathieson Alkali Works,* 190 U. S. 428 (23 Sup. Ct. 807); *Deming* v. *Beatty Oil Co.,* 72 Kan. 614 (84 Pac. 385); *Watts* v. *Vanderbilt, supra; Freeman* v. *Bean,* 266 N. Y. 657 (195 N. E. 368). See, also, Winer, Jurisdiction over Beneficiary Corporations in Stockholders' Suits, 22 Virginia Law Review, p. 153, at p. 160; Necessity of Joinder of Corporation in Representative Suit against the Directors, 44 Yale Law Journal, p. 1091. The beneficiary corporations are foreign corporations, and no agent doing business on its behalf in Michigan has been served. We think the suit fails for want of jurisdiction.

Plaintiffs urge that if this suit cannot be sustained as an action *in personam,* that it may be maintained as an action *in rem.* It is argued that the cause of action against the defendants is property within this State (*Kidd* v. *New Hampshire Traction Co.,* 72 N. H. 273 (56 Atl. 465, 66 L. R. A. 574), and that this would bring the case within the principle that a State may appoint a receiver of the local property of a foreign corporation (*Blake* v. *McClung,* 172 U. S. 239 [19 Sup. Ct. 165]; *Mills* v. *Anderson,* 238 Mich. 643), or that it may otherwise adjudicate in favor of the non-submitting foreign corporation at the suit of the shareholders by a proceeding *in rem* (*Holmes* v. *Camp,* 219 N. Y. 359 (114 N. E. 841); *Kidd* v. *New Hampshire Traction Co., supra*). We do not agree that the instant suit can be maintained as a suit *in rem.* In *Stewart* v. *Eaton, supra,* Mr. Justice POTTER said:

''A proceeding *in rem* is one taken directly against the property and has for its object the disposition of the property without reference to the title of individual claimants. But in a larger and more general sense, the terms are applied to acts between parties where the direct object is to reach and dispose of property owned by them or of some interest therein. Such are cases commenced by attachment against the property of debtors, or instituted to partition real estate, foreclose a mortgage, or enforce a lien. So far as they affect property in the State, they are substantially proceedings *in rem* in the broader sense which we have mentioned.''

In the case before us, there is no *res* in control of the court, the case having been begun as though it were the usual equity action for an accounting. In a proceeding *in rem*, the court disposes of property owned by the parties or of some interest therein. The alleged cause of action against the directors is not the subject of disposition; this suit has not for its object the transfer of ownership in the intangible right, as it is in the typical garnishment of a claim owned by a nonresident debtor against a Michigan creditor (*H. Williamson, Ltd.,* v. *Phinney-Walker Co.,* 247 Mich. 645; *Harris* v. *Balk,* 198 U. S. 215 [25 Sup. Ct. 625, 3 Ann. Cas. 1084]). Plaintiffs do violence to the principles of *in rem* procedure and the constitutional limitations (*Pennoyer* v. *Neff, supra*) by the bootstrap argument that their allegation of a cause of action gives the court jurisdiction to enable it to go ahead and adjudicate the same cause of action as to all parties involved. While this cause of action might be a sufficient *res* for other purposes, it will not justify our proceeding at the suit of the shareholders. There is language which might substantiate plaintiff's argument in *Kidd* v. *New Hampshire Traction Co., supra,* but the statement of facts shows

that there was an actual attachment of money and property by a writ in aid of the bill in equity, so that the court did not rely on the claim against the wrongdoers as the basis for its jurisdiction *in rem.* Furthermore, in the instant suit, the real parties in interest are the beneficiary corporations; because the recovery should run in favor of these corporations and not the shareholders, there must be *in personam* jurisdiction over the corporations in whose behalf the action was instituted. This is the rule adopted by the authorities with little exception wherever the question has arisen. *Lawrence* v. *Southern Pacific Co.,* 180 Fed. 822; *Freeman* v. *Bean, supra; Davenport* v. *Dows, supra; Watts* v. *Vanderbilt, supra; Philipbar* v. *Derby, supra; Geer* v. *Mathieson Alkali Works, supra; Eldred* v. *American Palace Car Co.,* 44 C. C. A. 554 (105 Fed. 457); *Silber Light Co.* v. *Silber,* 48 L. J. Ch. (N. S.) 385 (L. R. 12 Ch. Div. 717, 40 L. T. [N. S.] 96); *Deming* v. *Beatty Oil Co., supra. Holmes* v. *Camp, supra,* is cited for the contrary view, that an *in rem* suit may proceed without personal service on the beneficiary corporation. In that case, the question for adjudication was the ownership of a nonresident wrongdoer in stock which had a local situs. It was held that the executor of the nonresident owner could be served by publication. It may be granted that the principle of *Pennoyer* v. *Neff, supra,* would not apply as to the interest of the wrongdoer in the stock which was subject to the control of the forum. But the question of joinder of the beneficiary corporation was not decided in the *Holmes Case,* although the court did express its intimations on the subject. The statements on this point lose their persuasiveness when we note that in the later case of *Freeman* v. *Bean, supra,* the same court expressly refused to allow a

stockholders' suit to proceed without actual *in personam* jurisdiction of the beneficiary corporation.

In view of our holding on the jurisdictional question, we need not discuss the other questions raised in regard to the right of the court to interfere with the internal conduct of the affairs of a foreign corporation, the attack on the Illinois judgment for fraud in its procurement, the inquiry into the validity of the dissolution of the Delaware corporation, plaintiffs' laches, and the issue of multifariousness.

The decree of dismissal is affirmed; the writ of mandamus to order the trial court to grant the petition for discovery is denied. Costs to defendants W. K. Kellogg and Kellogg Company.

BUSHNELL, C. J., and SHARPE, POTTER, CHANDLER, NORTH, MCALLISTER, and WIEST, JJ., concurred.