(No. 29566.—

JULIA E. DEAN *et al.*, Appellants, *vs.* JOHN L. KELLOGG
*et al.*, Appellees.

*Opinion filed September 18, 1946.*

JOSEPH B. GILBERT, and PHILIP C. SHEEHAN, both of Chicago, for appellants.

CONCANNON, DILLON, SNOOK & ARTHUR, and KIRK-LAND, FLEMING, GREEN, MARTIN & ELLIS, both of Chicago, for appellees.

Mr. CHIEF JUSTICE GUNN delivered the opinion of the court:

On October 2, 1944, the plaintiffs, Julia E. Dean *et al.*, as minority stockholders of Warren-Teed Seed Company, filed their complaint in the superior court of Cook county against John L. Kellogg, a majority stockholder of such company, and against Kellogg Company, a corporation, for an accounting of the assets of the Warren-Teed Seed Company. The basis of the claim against Kellogg individually is that as a majority stockholder he contrived the conversion of all such assets to his own use, and against the Kellogg Company because it had acquired such assets with knowledge of the fraud. The relief sought is to have an accounting. The superior court, upon motion, dismissed plaintiffs' complaint, and its judgment was affirmed by the Appellate Court for the First District. The cause is in this court by reason of a certificate of importance issued by the Appellate Court.

The plaintiffs' cause of action, simply stated, is as follows: In 1929 they were stockholders of the Warren-Teed Seed Company, hereinafter referred to as Warren Co., a Nevada corporation. Plaintiffs owned 131,000 shares of a total of 750,000 shares, and Kellogg owned substantially all of the rest. He was also president and a director. Seedtown Products, Inc., hereinafter referred to as Seedtown, was organized in 1930 with 750,000 shares. Kellogg was a director of this company, and it is claimed it was organized to obtain control of the Warren Co. It did obtain control of the Warren Co. by exchange of its stock, and in like manner control of Kellogg Terminal Warehouses, Inc.. It is charged the Warren Co. was to distribute the shares of Seedtown stock among its stockholders, but never did so. Seedtown assumed all of the liabilities of the Warren Co., and the latter owed Kellogg $219,740. It is alleged this was a fictitious debt. Seedtown also assumed an indebtedness of $283,534 owed by Warren Co. to John L. Kellogg Seed Co. The latter company agreed to cancel this indebtedness for 18,902 shares of Seedtown at $15 per share.

The plaintiffs further allege that in this manner Seedtown acquired assets of the value of $3,750,000. On June 15, 1930, Kellogg resigned as president and director of Seedtown, and brought suit against the latter for the indebtedness it owed him by assumption of Warren Co.'s obligation, and in July of the same year obtained a judgment for $220,006. It is also alleged that Seedtown, on December 21, 1931, was dissolved through the fraudulent acts of Kellogg, because out of the necessary amount of votes of stock to dissolve the corporation he himself owned 90,442 shares. He voted 18,902 as president of the Kellogg Company, and voted 390,281 shares as president of the Warren Co., whereby, upon dissolution, the stockholders were entitled to their prorata share of the assets, but never obtained any, and Kellogg did take and obtain said assets,

and transferred same to Kellogg Co., under which it is alleged the plaintiffs were entitled to an accounting. All of the details of the transaction, of which the foregoing is but an abstract, are set out at length in the opinion of the Appellate Court in 327 Ill. App. 520.

The defendants, Kellogg as an individual, and the Kellogg Co., filed separate motions to dismiss, setting forth affirmative defenses under section 48 of the Civil Practice Act. Each of said defendants alleges the complaint does not state a cause of action, because it is based wholly upon conclusions. Kellogg also sets out the cause of action did not accrue within the five-year Statute of Limitations, and that plaintiffs are guilty of *laches* in that they did not bring their suit until more than twelve years had elapsed after the alleged wrong. The motion of defendant Kellogg Co. sets out that it and Kellogg had been sued in the circuit court of Calhoun county, Michigan, by the same plaintiffs, and that said court had dismissed said suit in April, 1939, which judgment was affirmed by the Supreme Court of Michigan in 294 Mich. 200.

The complaint also alleges that one of the plaintiffs, Julia E. Dean, on behalf of herself and other stockholders and creditors of Seedtown, filed a suit in the superior court of Cook county seeking to restrain the dissolution of Seedtown and for an accounting, and that this case was dismissed upon plaintiffs' motion in April, 1933. It is also alleged that on April 21, 1933, the same Julia E. Dean filed a representative suit on behalf of herself and other stockholders in the United States District Court for the Northern District of Illinois against John L. Kellogg, W. K. Kellogg and Kellogg Co., seeking an accounting for all property and assets appropriated in fraud of the stockholders of Seedtown and Warren Co. This suit was dismissed on October 13, 1936, without adjudication. It was two years after this that the Michigan litigation above

referred to was filed, and prosecuted unsuccessfully by the plaintiffs.

It is the contention of appellants they are not barred by *laches* because *laches* implies acquiescence, and that although their numerous suits were unsuccessful they should not be barred by lapse of time merely because they did not discover the proper remedy within the proper time. To sustain this proposition appellants cite the case of *Southern Pacific Co. v. Bogert,* 250 U. S. 483, 61 L. ed. 1099.

There is a vital distinction between the facts in the *Southern Pacific case* and in the present one. In the former the Southern Pacific controlled a majority of the stock of the debtor corporation, which had executed a mortgage securing bonds which were in default. The value of the stock of the Southern Pacific, like that of the minority, was subject to being rendered valueless by a foreclosure of the mortgage. A foreclosure proceeding was commenced and the Southern Pacific was instrumental in causing the organization of a new corporation of almost the same name, and this company, by an exchange of its bonds for those of the debtor corporation satisfied the mortgage, but the Southern Pacific, instead of acquiring the same proportion of stock in the new company as in the debtor corporation, acquired all of the stock, and thus the equity of the minority stockholders in the debtor corporation was completely wiped out. This was accomplished by the Southern Pacific without purchasing the original bonds, but merely by the corporate device above.

In the present case the Warren Co. owed Kellogg over $219,000. A corporation may legally borrow money of its officer or stockholder, and the latter may legally enforce his loan. (*Reichwald v. Commercial Hotel Co.* 106 Ill. 439; *Mullanphy Savings Bank v. Schott,* 135 Ill. 655; *Higgins v. Lansingh,* 154 Ill. 301; *Illinois Steel Co. v. O'Donnell,* 156 Ill. 624; and cases cited under secs. 907-

908 Fletcher's Corporations, Perm. Ed.) Kellogg did obtain a judgment for said debt against Seedtown, which appellants admit is still in force and effect. Under this judgment Kellogg sold and acquired the assets of Seedtown. His stock in the latter company, as well as that of plaintiffs, by reason thereof became worthless. If the same had been done at the instance of another creditor, who had proceeded in the same manner, the result would have been the same, and no remedy available to appellants. The assets of Seedtown cost Kellogg in excess of $219,000, plus the value of his holding in the Warren Co., which had been taken over by Seedtown, and represented by its stock. Herein lies the difference between the facts in the present case and those in the *Southern Pacific case:* In one, a valid debt was enforced against the corporation affecting its stockholders alike; in the other, the same debt was secured by the same property, effected by an exchange of bonds, but the majority stockholders of the debtor company reappear as the stockholders of all of the stock of the new company. It is obvious there is no comparison in the facts.

The plaintiffs do not allege the sale of the Seedtown assets under this judgment, but only that Kellogg fraudulently acquired them. The complaint having shown Kellogg had a judgment for his debt, which would authorize a sale, it would be necessary for the plaintiffs to rebut the inference Kellogg lawfully acquired the assets through this judgment, since fraud is never presumed. The motion of appellees to dismiss, however, sets out that in a prior action appellants did allege the assets owned by Seedtown were sold under this same judgment, and therefore no liability can arise from the facts shown by the complaint and the motion unless the judgment in favor of Kellogg may be held void. This would be a collateral attack. A judgment may be thus attacked for lack of jurisdiction or fraud in its procurement. "The general rule is, a judgment rendered by a court having jurisdiction of the parties and the

subject matter, unless reversed or annulled in some proper proceeding, is not open to contradiction or impeachment in any collateral action or proceeding, except for fraud in its procurement, and even if the judgment is voidable and is so illegal or defective that it would be set aside or annulled on a proper direct application, it is not subject to collateral impeachment so long as it stands unreversed and in force. [Citations]" (*Baker* v. *Brown,* 372 Ill. 336.) It is likewise a general rule that every presumption will be indulged in favor of the validity of the judgment upon collateral attack. *People ex rel. Stuckart* v. *Culver,* 281 Ill. 401; *People ex rel. Peterson* v. *Omen,* 290 Ill. 59.

There is no intimation there was a lack of jurisdiction of the parties and the subject matter in the proceeding in which judgment was obtained. The allegations in the complaint relating to the fraud alleged to have been practiced consist of substantially the following: That Kellogg was in a position to. manipulate the books of account, and by means of fictitious entries show the Warren Co., and later Seedtown, were indebted to him and the Kellogg Seed Co. in large amounts, and that by means thereof the books erroneously reflected a fictitious debt in excess of $215,000. It is to be noted there is no direct charge there was no debt owing to Kellogg, but the effect of this allegation is, substantially, that there was erroneous bookkeeping. It then alleges Kellogg embarked upon a fraudulent scheme, and on July 23, 1931, obtained a judgment for over $220,000. Attached to the complaint is a letter of Kellogg to all of the stockholders, dated December 7, 1931, giving the reason he was advancing for the dissolution of· the corporation. In this letter he points out that in the three companies he had a cash outlay of some $1,200,000. Under the same date the president of Seedtown sent a letter to the stockholders showing the amount of the judgment procured by Kellogg. These letters were made a part of the complaint as exhibits. We think these allegations are

insufficient to show the procurement of a judgment by fraud. They do not allege specific facts which in themselves would constitute fraud.

The record shows the organization of several companies under one management with Kellogg advancing most of the money, and the substance of the allegations is that the bookkeeping method shows a fictitious debt, and is therefore fraudulent. One alleging fraud in the procurement of a judgment must allege specific facts. The use of the term "fraudulent" does not set forth a fact, but it is merely a term which is descriptive or abusive. (*Anderson* v. *Anderson,* 339 Ill. 400.) For this reason, the complaint, taken alone, without other allegations, would be insufficient to state a cause of action. Appellants in their brief say they do not collaterally attack the judgment in favor of Kellogg, but that the complaint merely points out that the obtaining of the judgment was a part of the general scheme to convert to his own use the corporation assets as one link in the chain. If this be deemed a sufficient charge it still would fail to state a cause of action if one of the essential links in the chain, *viz.,* the judgment, was not invalid. Merely by calling the judgment a part of a fraudulent scheme is not sufficient, because, if the judgment were valid, merely calling it a scheme would not render it invalid. If Kellogg had a legal debt and lawfully reduced it to judgment, levied upon the Seedtown assets and caused a sale, it cannot be impeached merely because he insisted upon a satisfaction of the judgment the same as any other creditor might do.

The gist of appellants' claim of equity rests, therefore, upon the showing that the judgment obtained by Kellogg was void. All of the facts go back to this point. If there is no judgment there can be no more than an unliquidated debt, in which case all of the stockholders would have proportionate interests in the equity above the debt of the corporation. The Kellogg judgment was rendered in 1931;

no motion was made to vacate it within thirty days. A proceeding was brought by Dean *et al.* in the superior court of Cook county December 9, 1931, against Seedtown, Warren Co., Kellogg *et al.* demanding an accounting, and was dismissed on plaintiffs' motion on April 13, 1933. April 21, 1933, Julia E. Dean filed a suit in the United States District Court for the Northern District of Illinois against Kellogg and Kellogg Co. seeking an accounting for all of the property and assets claimed to be appropriated by them, or with knowledge of fraud. This suit was dismissed for lack of proper service December 13, 1936. In May, 1938, the plaintiff *et al.* filed a stockholders' suit in the circuit court of Calhoun county, Michigan, against Kellogg and Kellogg Co. and Seedtown, praying for an accounting for an alleged conversion by Kellogg of Seedtown assets. The court found Kellogg was not a resident of the State of Michigan. In its opinion the circuit court found the plaintiffs were guilty of inexcusable *laches* in bringing the suit; also, that the complaint was multifarious, and that all of the parties were not before the court. Because of the lapse of time the court, in its opinion, said the claim could not be amended to cure *laches,* and the plaintiffs' complaint was thereupon dismissed for want of jurisdiction, *laches,* and multifariousness. This was affirmed by the Supreme Court of Michigan on June 19, 1940. *Dean* v. *Kellogg,* 294 Mich. 200.

No one of these proceedings was for the purpose of setting aside or holding void the judgment under which appellee Kellogg obtained title to the assets of Seedtown. The allegations of the complaint are not sufficient to invalidate the judgment on collateral attack because the alleged fraud of Kellogg was not of the type which attempted to give the court a colorable jurisdiction. If the alleged facts were true it would only show perjury or chicanery in obtaining judgment after jurisdiction was acquired. There is no fact alleged which would show

jurisdiction to hear the case was not acquired in the regular manner. The rule as to the type of fraud which will render a judgment void upon collateral attack is well settled. In *People* v. *Sterling,* 357 Ill. 354, in considering this point, we said "there are two classes of frauds drawn in question in cases of this kind: First, there is that kind of fraud which prevents the court from acquiring jurisdiction or merely gives it colorable jurisdiction; and second, that kind of fraud which occurred in the proceedings of the court after jurisdiction had been obtained, such as perjury, concealment, and other chicanery. The first variety of fraud will invalidate the decree, rendering it an entire nullity. On the other hand, it is well established that the second class has no such legal effect." To the same effect are *Beck* v. *Lash,* 303 Ill. 549, and *Foutch* v. *Zempel,* 332 Ill. 192.

No direct attack on the judgment having been made, and the allegation in the complaint being insufficient· to sustain collateral attack, the device of the stockholders' suit is claimed to be available to appellants after the lapse of thirteen years. All of these actions called for an accounting. Both law and equity have jurisdiction of an accounting, and therefore their jurisdiction is concurrent. (*Townsend* v. *Equitable Life Assurance Society,* 263 Ill. 432; *People* v. *Small,* 319 Ill. 437.) Where both a court of equity and a court of law have concurrent jurisdiction, the bar of the statute of limitations has been held to be as binding in equity as at law. *Lancaster* v. *Springer,* 239 Ill. 472.

Appellants, however, say *laches* does not run as long as attempts are made to recover against the defendants, however ill-founded, and cite *Southern Pacific Co.* v. *Bogert,* 250 U. S. 483, 63 L. ed. 1099. This language is contained in this decision, but is coupled with the proviso that the "defendant is not prejudiced by the delay." If the complaint had alleged facts showing Kellogg had obtained all of the assets and stock of Seedtown without any con-

sideration whatever, and merely transferred it to another company in which he controlled all of the stock instead of only a majority of the stock of the company from which it is taken, we would have a case similar to the *Southern Pacific case.* In such an event the majority stockholder would become a trustee for the minority stockholders for the simple reason the form of the assets had been merely changed, without any substantial reduction in value. This is not the case here and, as pointed out, in order to make the case similar it is necessary to show the judgment obtained by Kellogg is void, and he therefore received the assets of Seedtown by a title that was colorable by the mere fact it was indebted to him. The assault upon Kellogg Co. can be successful only in case recovery is had against Kellogg as an individual.

The five-year Statute of Limitations is also available because the relation between Kellogg as dominant stockholder and the minority stockholders was not that of trustee of an express trust, (*Becker* v. *Billings,* 304 Ill. 190,) which is necessary to exempt it from the bar of the Statute of Limitations. (*Lancaster* v. *Springer,* 239 Ill. 472; *Hayward* v. *Gunn,* 82 Ill. 385; *Quayle* v. *Guild,* 91 Ill. 378.) It appears in this suit that at all times since December, 1931, the plaintiffs had knowledge of the facts upon which they base their claim seeking an accounting from Kellogg and Kellogg Co. No reason is shown why a suit was not prosecuted to a conclusion against Kellogg individually until this case, which was commenced in October, 1944. To permit recovery against Kellogg after the lapse of thirteen years would be prejudicial to the Kellogg Co., which succeeds to his interest. *Southern Pacific Co.* v. *Bogert,* 250 U. S. 483, 63 L. ed. 1099.

The decree of the superior court of Cook county and the judgment of the Appellate Court for the First District should be, and are, accordingly, affirmed.

*Decree and judgment affirmed.*